## STATE OF FLORIDA VS. JAMES MADOIL.

1. The separation of a juror from his fellows, after the jury have been sworn, and before they have rendered a verdict, without the consent of the Judge, will not "*per se*" avoid the verdict. It will amount to a contempt of court on the part of the juror, for which he may be punished by fine or imprisonment, or both.

2. When a juror separates from his fellows after he has been sworn and before verdict, without the consent of the court, and it can be shown that during the separation there is a reasonable cause to apprehend

that some improper practice had taken place, or some undue influence exerted over the juror; it will be the duty of the court, in the exercise of a sound discretion, to set aside the verdict and award a "*venire de novo.*"

3. A verdict should never be set aside for a juror's misbehavior towards the court, unless it is prejudicial to one or other of the parties.

4. In trials for offences punished capitally, the conduct of a juror who separates from his fellows, should be subjected to the most rigid scrutiny in order to ascertain if it was blameless while separated from his fellows, and the verdict should only be allowed to stand when the prosecution can show that there was no opportunity to tamper with the juror, or to influence him in finding his verdict. In all cases other than capital felonies, the verdict should stand, unless the party against whom it is given can show improper influences were used to produce it.

5. When a person is called as a juror, he may be examined on "*voir dire*" and asked whether he is twenty-one years of age? Whether he has the requisite property qualifications? Whether he is interested in the result of the suit, or is of kin to either of the parties? And whether he is a citizen? and, inndeed, all questions that are pertinent, the answer to which will not tend to degrade the juror, or be to his dishonor or discredit. In prosecutions for felony, he may be further interrogated as to whether he has made up and expressed an opinion as to the guilt or innocence of the accused.

6. If parties in civil suits, or the accused in criminal prosecutions, omit to enquire into the qualifications of a juror when he is called to the book to be sworn, and to make objection to him before he is sworn, it will be too late to raise the objection after he has been sworn.

7. When a party has the right to object to a juror in civil suits, or to challenge him in criminal prosecutions, and neglects or omits to do so before the juror is sworn, it would require a strong case of hardship to induce the court to interfere to set aside a verdict and award a "*venire de novo.*"

8. An appellate court will relieve a party by setting aside the verdict and awarding a "*venire de novo*" where one of the jurors who served on the trial had been convicted of an infamous crime, which fact was unknown to the party at the time of the trial, and about which he would not be allowed to enquire on "*voir dire.*" Juries must be "*probi et legales homines.*"

9. A large discretion is vested in the Judge who tries the cause in the court below; and if from any cause the mind of a juror is not in a proper and fit state to render an impartial verdict, the Judge who pre-

sides at the trial, in the exercise of a sound legal discretion, should award a " *venire de novo;*" in order that the ends of justice may be attained:

10. The incompetency that will authorize the court to interfere after a juror has been sworn, must be of such a character as would defeat a fair and impartial trial, if the juror is permitted to serve or the verdict is allowed to stand.

11. A fixed domicil of the juror in the county in which the court is held, without regard to length of time of such domicil, if sufficient to constitute the party a juror, and neither the want of length of residence or qualification as a householder, is such an objection to a juror as will justify the setting aside a verdict:

Appeal from Nassau Circuit Court.

This case was argued at Lake City and decided at Tallahassee.

*James Banks for Attorney General,* for the State.

*C. P. Cooper* for James Madoil.

1st Exception: Wills' Circumstantial Evidence, pages (marginal) 161, 150.

2d Exception: Arch. Crim. Prac. and Plead., vol. 1, (6th edition by Waterman) pages 125, 125–1, 125–2, 125–3, 125–4.

3d Exception: Plee. Sup. Ct. Rep., vol. 5, page 285; Simon, a Slave, vs. The State of Florida, Ga. Sup. Court Rep., vol. 10, page 512.

4th Exception: Bill of Rights, Constitution of Florida of 1865; page 441, Case of Holden vs. The State 18th, Ibid.; page 511, Berry vs. The State.

5th Exception: Thompson's Dig., 344 and 345; Fla. Sup. Ct. Rep., vol. 9; O'Conner vs. The State, page 215; Constitution of Florida, Art. 6, Sec. 1.

6th Exception: Fla. Sup. Ct. Rep., vol. 9; Cato, a Slave, vs. The State, page 163; Ibid. O'Conner vs. The State, page 215; Ga. Sup. Ct. Rep., vol. 10, page 512.

A statement of the case is contained in the opinion of the Court.

DOUGLAS, J., delivered the opinion of the Court :

At the Spring Term of the Circuit Court for Nassau county, Suwannee Circuit, the appellant, James Madoil, was indicted for larceny in feloniously taking and carrying away a sail of the value of forty dollars. On the trial the accused was convicted and sentenced to pay a fine of $200. On a subsequent day of the term, a motion was made in arrest of the judgment, and the following reasons assigned :

1. That the jury adjourned and separated without the consent of the accused or the order of the Judge, before rendering a verdict, and were not during the adjournment and separation in charge of an officer.

2. That one or more of the jurors were not householders.

3. That one of the jurors had not been a resident of Nassau county but for three months, although a citizen and resident of the State of Florida for twenty-four years. These are the facts presented by the record, though on the argument at bar other facts and circumstances were mentioned as having taken place on the trial in the court below.

Before proceeding to decide the only questions raised and presented by the record, we must again animadvert upon the imperfect manner in which the records are brought to this court from the courts below. It is frequently made known to this court in argument, that important decisions and rulings have been made in the court below, on the trial of a cause, yet the record shows nothing of the facts on which these rulings and decisions were made, and it may thus well happen that injustice is done to parties because this court is not put in possession of the necessary information to enable it to decide the matter understandingly. We have often called the attention of the profession to the im-

portance of presenting, by a proper bill of exceptions, all facts which are not necessarily a part of the record, and which are relied upon as proper and necessary to a correct decision of the case. Our books of reports contain numerous decisions on this subject, and we again call the attention of the members of the bar to the decisions made by this court on the subject.

The clerks of the Circuit Courts, in many cases, are without experience, and they should receive aid and instruction from the attorneys who conduct the case in court. It too often happens that counsel suppose their duty ends when they have conducted a suit in court to judgment.

The argument of a cause is by no means all the duty counsel owe to clients. It is quite as important that the record should be properly made up, so that the judgment, when obtained, will be secure from defect in the appellate court, because of an imperfect record. To this end it is proper that counsel should supervise the entries made of record in the progress of a trial, and if the judgment is appealed from, it is important that he should have a proper record for the appellate court to pass upon. In this case there is no bill of exceptions showing what transpired on the trial, and the reasons assigned as ground for the motion in arrest of judgment are not supported by a bill of exceptions setting forth the facts on which the motion is based. Under this state of facts we might well affirm the judgment of the court below, without considering the grounds assigned for arrest of the judgment, as they do not appear upon the record, and are based upon facts which could only become a part of the record by a bill of exceptions, signed and sealed as the law directs; yet as we may infer that the circumstances stated in the motion did occur, we will proceed to decide the questions raised.

In considering the first question raised for our decision, we find on examination that the weight of authority is

greatly against the position assumed by the counsel for appellant. The question was settled in England at an early date, and so far as we can see, remains unchanged up to the present time.

The rule in the English courts as established by repeated decisions, seems to be this : That after a jury has been selected and sworn, and the cause submitted to them for their consideration, if they separate without the consent of the court, such separation will amount to a contempt of court on the part of the jury, but it will not be good ground to make the verdict void, unless it is shown that during the separation there is cause to apprehend that some improper practice had taken place, and that by mixing with the multitude undue influence had been exerted over them, and that their verdict had been, or possibly might have been, influenced by communicating with others. If such proof should be made, or if there should be well-founded apprehension that the juror had yielded to improper influences, it would be the duty of the court to set aside the verdict, and to punish the misbehaving jurors. But in the absence of all such proof, there can be no good reason for setting aside the verdict on the ground that the jury had separated before they were properly discharged by the court. A verdict, it is said, should never be set aside for a juror's misbehavior towards the court, unless it is prejudicial to one or other of the parties. 1 Halstead's Rep., 110.

In the case of the King vs. Woolf et al., 1 Chitty's Rep., 401, Abbott, Chief Justice, said : " The only difference that can exist between the fact of the jury separating with or without the approbation of the Judge, as it seems to me, is this, that if it be done without the consent or approbation of the Judge, express or implied, it may be a misdemeanor in them, and they may be liable to be punished ; whereas, if he gives his consent, there will be no such consequence of a separation." See also 6 Term Rep., 530.

The rule in the English courts seems to be the same in civil and criminal cases. 1 Chitty's Crim. Law, 643, 529. They make no distinction between felonies of the highest grades, such as treason and homicide, and civil suits between parties. The Judge looks to see if there is any reason to believe that the jury have yielded to improper influences, and if there is no such proof or charge, the verdict will stand though the jury may be punished for a misdemeanor.

In support of the position that the separation of the jury will not avoid the verdict, if there is no impropriety on their part, see the following cases : The State vs. Babcock, 1 Con. Rep., 401 ; Hawkins' Book, 2, Ch. 22, Sec. 18 ; Bacon's Abrid. Title Jurors, letter M, page 2 ; 2 Hall, 306 ; Croke James, 22 ; 2 Bain & Ald., 462 ; 1 Chitty's Crim. Law, 629 ; Winslow vs. Draper, 8 Pick., 170 ; The State vs. Prescott, 6 New Hamp., 287 ; 2 Southrad's Rep., 827.

Having shown what is the rule of decision in the English courts on this subject, we will now examine the decisions of some of the courts of this country.

The American cases are not uniform in their rulings, yet it is believed that in general they agree with the decisions of the English courts.

The case of McCoul, decided by the General Court of Va., the highest criminal court in the State, is the leading case against the rule as established by the English courts, but has not generally been adopted as law by the courts of the other States. In that case the general court held, that the separation of the jury was sufficient cause for vitiating and setting aside the verdict. McCoul was put upon his trial for grand larceny, and was convicted by the jury. It was afterwards made known to the court by affidavits, that during the trial and before verdict rendered, two of the jurors had separated from their fellows. One of them, on the second lay of the trial, had gone to the house at which he boarded, against the remonstrance of the officer in charge of the jury,

and remained absent about 20 minutes. Another juryman, in the morning of another day of the trial, attended by the officer, went to visit a sick child. They were absent about twenty minutes, and the officer remained below whilst the juryman went up-stairs to see his family, and was absent from the presence of the officer about five minutes. The General Court decided that such a separation as was proved in this case was sufficient cause for setting aside the verdict. See 1 Virginia Cases, 304.

This was the first case on this subject decided by the courts of Va., and they have steadily adhered to the decision then made, in subsequent cases.

In the State of New York, the rule of decision has been different. In the case of "The People vs. Douglass," which was a trial for murder, 4 Cowen's Rep., 33, 34, 35, Judge Woodworth says: "On looking into the books, we do not find that mere separation of the jury has been held sufficient cause for setting a verdict aside, except in the case of The Commonwealth vs. McCoul. This case does go the length of saying that the court should guard against the possibility of abuse by setting aside the verdict, if any of the jury depart from the control of the officer. But the court does not profess to go upon any adjudged case in England, and we think the English cases are founded on the better reason. These are uniform, that though the jury separate, if there be no further abuse, this shall not vitiate the verdict, though it would be a contempt of court, if contrary to their instructions, and would be punishable as such." In the case of the "People vs. Douglass," though the court held that the mere separation of the jury, without any further abuse, is not sufficient ground for setting aside the verdict, the court, notwithstanding, decided unanimously, that sufficient cause existed in that case for granting a new trial. The allegation on the part of the prisoner was, that

two of the jury, not only separated from their fellows, but also drank whiskey, and conversed freely on the subject of the trial.

In South Carolina it has been adjudged legal, when a trial for felony was suspended at night, to suffer the jury to disperse till the next morning. See Anderson's Case, 2 Bailey's Rep., 565. See also 1 Penn, Rep., 278 ; 1 Halstead's Rep., 110 ; State vs. Babcock, 1 Conn. Rep., 401 ; Burrell vs. Phillips, decided in the U. States Circuit Court by Story, J., 1 Gall. Rep., 360 ; 3 John. Rep., 252 ; 1 Cowen's Rep., 221.

These decisions are in confirmation of the law as laid down by Chief Justice Abbott, in the case of the King vs. Woolf et al., and proceed upon the principle that the separation of the jury is not *per se,* a sufficient cause for setting aside and avoiding the verdict, but that there must be some proof showing cause to apprehend that some improper practice has taken place while the jury separated, calculated to influence their verdict, or that by mixing with the multitude they were subjected to improper influences. In the absence of such proof or suggestion, the verdict will stand though the court may punish the misbehaving jurors.

In some of the States the courts have made a distinction between capital felonies and other offences, in the application of the rule. While we do not find this distinction supported and sustained by the weight of authority, yet in trials for offences punished capitally, where one or more of the jury separate from their fellows, we think it should be shown that the separation was from urgent necessity, and that no opportunity was offered for any improper or undue influence. In such cases the conduct of the absent juror should be subjected to the most rigid scrutiny, in order to ascertain if it was blameless while separated from his fellows, and the verdict should only be allowed to stand when the prosecution can show that there was no opportunity to tamper with

the juror, or to influence him in finding his verdict.   In all other cases other than capital felonies, the verdict should stand, unless the party against whom it is given can show improper influences were used to produce it.

The case of The People vs. Douglass, and The State vs. Babcock, above cited, were trials for murder; also the case of The Commonwealth vs. Knapp, 10 Pick. Rep., and Anderson's Case in 2 Bailey's Rep., 565.   In each of these cases the court held that the separation of a juryman from his fellows, was not *per se*, sufficient cause to avoid the verdict.

Courts charged with the administration of the criminal law, cannot be too vigilant in guarding the rights of the accused, and also in securing to the State a fair and impartial trial.   To this end, efficient and trustworthy bailiffs should be appointed to attend upon the jury, and both the jury and the officer having them in charge should be instructed as to their duty when out of the presence of the court.

No higher offence can be committed against the administration of justice than misbehavior on the part of jurors after a case has been committed to their charge.

In this case the record shows that the Judge who presided on the trial, when it was made known to him that the jury had separated, instituted a strict inquiry into their conduct, and was satisfied from the proofs that there had been no misbehavior on the part of the jury, as indeed none had been charged.

The remaining error assigned is, that one or more of the jurors were not house-holders, and that one of the jury had not been a resident of the county in which the trial took place more than three months, though a resident and citizen of the State for about twenty-four years.

As the question presented in this case is of frequent occurrence in the courts of this State, we shall examine it at

more length than the case immediately under consideration would seem to require.

When a person is called as a juror he may be sworn on his "*voir dire*," and asked whether he is twenty one years of age, whether he is a householder, whether he is interested in the result of the suit or is of kin to either of the parties? and whether he is a citizen; and, indeed, all questions that are pertinent, the answer to which will not tend to degrade the juror or be to his dishonor or discredit.

In prosecutions for felony, he may be further interrogated by the court at the suggestion of the accused, as to whether he has made up and expressed an opinion as to the guilt or innocence of the accused, and the character of this opinion as to whether it is a fixed opinion, or only a hypothetical opinion that will yield to evidence given on the trial. If the parties in civil suits, or the accused in criminal prosecutions, omit to make the objection to a juror before he is sworn, it will be too late to do so after he has been sworn.

There was formerly much doubt expressed in the books as to whether a juror might be asked in prosecutions for felonies, if he had made up an opinion against the accused, or if he had any prejudice against him.

In the case of The King vs. Edmonds et al., 4 Barn. & Ald., 471, after conviction upon an indictment for a conspiracy, the defendants moved for a new trial upon various grounds. One was the refusal to allow the prisoners to ask jurymen as to supposed expressions by some of them, showing opinions hostile to the defendants and their cause. There was no attempt to prove any such expressions by extrinsic evidence, but it was proposed to obtain the proof by questions put to the jurymen themselves. The Judge who tried the case refused to allow such questions to be answered, and the court of King's Bench held that he was right in this refusal. Abbott, Chief Justice, delivering the opinion of
21

the court, said : " The authorities showed that the juryman himself was not to be sworn when the cause of challenge tended to his dishonor; and it was a very dishonorable thing for a man to express illwill toward a person accused of a crime in regard to the matter of his accusation." On the trial of Peter Cook, for high treason, 13 Howell's State Trials, 334, the court held, that the juryman could not be asked on "*voir dire*," whether he had said he believed the accused guilty, and such seems to be the settled law of England at this day.

In the case of The State vs. Baldwin, 1 Constitutional Rep., 289, it was decided in South Carolina that the accused could not compel a juror to declare whether he has formed in his own mind an opinion as to the guilt or innocence of the prisoner in regard to the offence with which he is charged; but if the juror has expressed such an opinion, upon due proof of such declarations, he should be rejected as unworthy to sit upon a trial where the life of a man is concerned. This has ever since been the rule in South Carolina; see The State vs. Sims, 2 Bailey's Rep· 29, and The State vs. Crank, ib., 66. In Pennsylvania the same rule prevails, 4 Yates, 267. In New York and Virginia the rule is different; 7 Cowen's Rep., 125 ; 2 Va. Cases, 378. The leading authority on this subject is the opinion of Chief Justice Marshall on the trial of Aaron Burr. On this trial the accused was allowed to ask the jurors, as they came forward to be sworn, if they had formed and expressed an opinion as to his guilt or innocence. Since that time most of the States have followed the rule as laid down by the Chief Justice; it is the settled practice in the Federal Courts, and may be considered as the established law in this country.

We have thus seen what are the rights of parties, and what questions may be propounded to jurors in civil suits, and in prosecutions for felonies; and we have already shown if a party will not take his challenge before the juror is

sworn, he can never afterwards be allowed to challenge for a cause existing before he was sworn ; 3 Burrow's Rep. 1858.

" Were a defendant allowed to take his challenge to the jurors after the trial, he never would do it before, but would always rather depend upon moving the court for relief after trial ; for if he should be acquitted he would say nothing about the disqualification of the juror, and if convicted, he would avoid judgment by offering his objection. This in fact would be placing him in a situation totally exempt from danger and from punishment, so long as he could get a juror sworn, against whom he could offer any legal objection, and would give him the additional advantage of several chances for his acquittal." See the opinion of Haywood, J., in the case of the State vs. Greenwood, Hayw. Rep. 141.

Where the party has the right to challenge either in civil suits or in criminal prosecutions, and neglects or omits to do so before the juror is sworn, it would require a strong case of hardship to induce this court to interfere to set aside a judgment and award a new trial. There is, however, one case in which an appellate court will relieve a party, and that is, where one of the jurors who served upon the trial had previously been convicted of an infamous crime.— In such a case the party will not be permitted to ask the juror on " *voir dire* " if he has been convicted of an infamous crime, and he may thus be sworn on the jury, and the knowledge of his infamy obtained after he is sworn. In a case like this, it would be the duty of the appellate court to set aside the judgment and award a new trial, for juries must be " *probi et legales homines.*"

A large discretion is vested in the judge who tries a cause, and this discretion will not be reviewed when rightfully exercised in furtherance of the ends of justice.

We have already seen from the authorities cited, that the incompetency of a juror is no ground for granting a new trial by this court ; and that if the juror is not qualified to

serve, he must be objected to before he is sworn on the jury ; after he is sworn, it will be too late to raise the objection. If, however, from any cause, the mind of a juror who served on the trial is not in a proper and fit state to render an impartial verdict, the court who tries the cause, in the exercise of a sound discretion, should grant a new trial, in order that the ends of justice may be attained.

In the exercise of this discretionary power, courts should be careful not to give too much weight to charges of bias or prejudice made against jurors, but should require satisfactory proof that the charge is well grounded. Incompetency for the want of the requisite property qualification or residence, will not of itself be sufficient cause for setting aside a juror after he is sworn, or for granting a new trial.

The incompetency that will authorize the court below to interfere after a juror has been sworn, must be of such a character as would defeat a fair and impartial trial ; of this the court below must judge in the exercise of a sound legal discretion.

In this case, the only incompetency alleged against the jurors is, that one or more of them were not householders, and another had not resided in the county in which the trial was had more than three months. We do not think there were such objections to the jurors as entitle the accused to a new trial.

The judgment of the court below is affirmed.