John D. Shepherd v. The State of Florida.—Syllabus.

JOHN D. SHEPHERD, PLAINTIFF IN ERROR, VS. THE
STATE OF FLORIDA, DEFENDANT IN ERROR.

CRIMINAL LAW—PLEAS IN ABATEMENT BASED ON IRREGULARITIES OF
EMPANELMENT OF GRAND JURIES MUST BE DRAWN WITH RIGID CER-·
TAINTY AND STRICTNESS—CHANGE OF VENUE—EXCEPTIONS TO RE-
FUSALS TO GIVE INSTRUCTIONS CAN NOT BE TAKEN THROUGH MOTION
FOR NEW TRIAL—EMPANELING JURIES.

1. A rigid strictness is exacted in pleas in abatement setting up·
   mere irregularities in the selection of jurors. No ambiguity
   or uncertainty should exist therein, and they should be framed
   with the greatest accuracy and precision, and must be certain·
   to every extent.

2. Chapter 4122. laws, approved June 2d, 1893, relative to the em-
   paneling of juries, does not repeal sections 1157 and 2803 of the
   Revised Statutes.

3. Applications for changes of venue are addressed to the sound
   discretion of the trial court, and the refusal of such applica-
   tions will not be held erroneous, unless it appears from the
   facts presented that the court acted unfairly and committed a.
   palpable abuse of sound discretion.

4. Under the provisions of section 2 of Chapter 3431, act of March
   10th, 1883, (section 1092, Revised Statutes), *only such charges
   as were actually given by the court*,and that were deemed er-
   roneous, can be made the subjects of *exception* through the
   medium of embodiment in a motion for new trial. Exceptions·
   to rulings of the court *"refusing to give requested instructions,"*
   can not be taken or reversed by embodying such *refused in-
   structions* in a motion for new trial; but such exceptions must·
   be taken and reserved *at the time of the court's refusal of the·
   request to give them.*

5. Rulings of the court at the trial, upon the admission or rejection
   of evidence, that are assigned as error to the appellate court,
   can not be considered when no exceptions thereto were taken
   or reserved.

Writ of Error to the Circuit Court for Orange county.

The facts in the case are stated in the opinion of the
court.

*J. L. Bryan*, *L. D. Broome*, and *A. F. Odlin*, for Plaintiff in Error.

*The Attorney–General*, for the State.

Taylor, J.:

The plaintiff in error, at the Fall term, 1894, of the Circuit Court of Orange county, was indicted, tried and convicted for the crime of murder in the first degree and sentenced to death, from which he takes writ of error here.

There are twenty-seven assignments of error. Commencing with the fifth amendment we will discuss them in the order in which they are stated, reserving the first, second, third and fourth assignments to be considered together.

The fifth assignment is, that "the court erred in overruling the motion of the defendant, prior to his arraignment, that the indictment be quashed." We find no such motion in the record, but, in its stead, we find that the defendant before arraignment interposed a special plea in abatement that sets up, in substance, that the grand jury that found the indictment was not a legal grand jury, in that such jury was not drawn from the box containing the list of persons selected by the board of county commissioners to serve as jurors in said county; and because such jury was not drawn or selected as required by law; and because said jury was not taken from the box containing the names of thirty persons as required by law; and because such jury was not summoned fifteen days before the sitting of the pending term of said Circuit Court; and because the Circuit Judge has no power to order a grand jury, as such, by himself; and because the Circuit Judge in a county where there is a Criminal Court of Record, as

Orange county has, has no power to summon a grand jury pending the term of court then being held; and because there is no authority of law to summon a grand jury from the by-standers, or from the county at large; and because in the summoning and empanelling of the grand jury that found said indictment there was not thirty persons summoned to serve as jurors, and eighteen thereof drawn from the list of thirty; and because the names of thirty persons to serve as jurors were not drawn fifteen days before the sitting of said term of court at which such grand jury was empanelled; and because no venire for grand jurors was issued to the sheriff fifteen days before the sitting of said term at which said indictment was found; and because no advertisement of the drawing of the grand jurors was publicly made in the court house of said county ten days previous to the drawing thereof by written notice posted at three public places in said county; and because the sheriff did not proclaim the meeting to the Clerk of the Circuit Court and County Judge, or, in his absence, a justice of the peace, and the sheriff, or, in his absence, a deputy sheriff, and the purpose of said meeting to draw such grand jury at the door of the court house in said county, just prior to the drawing of such jurors; and because the said grand jurors that found said indictment were selected by the sheriff of Orange county, and were summoned of his own volition and by his own selection, in violation of law; the said sheriff being without authority of law to select the number of the grand jury; and because the names of the grand jury so illegally summoned were not drawn by the Judge of the Circuit Court in open court from the box containing the names of the persons selected by the board of county commissioners to serve as jurors for the year 1894, as required by the

laws of the State of Florida. This plea was demurred to by the State, and the court, upon argument, sustained the demurrer. Treating this ruling as being the one intended to be assigned by the fifth assignment of error, we find no. error in it. A rigid strictness is exacted in pleas in abatement setting up mere irregularities in the selection of jurors. No ambiguity or uncertainty should exist therein, and they should be framed with the greatest accuracy and precision, and must be certain to every extent. Reeves vs. State, 29 Fla. 527, 10 South. Rep. 901; Woodward vs. State, 33 Fla. 508, 15 South. Rep. 252. The contention of the plea here, in substance, is that the grand jury that returned this verdict was not selected and drawn according to the provisions of the law as contained in Chapter 4122 laws, approved June 2nd, 1893. This act expressly repeals Chapter 4015, approved June 8th, 1891, but repeals no other provision of law that is not inconsistent with its provisions. At the time of its enactment, sections 1157 and 2803 of the Revised Statutes were in force, and there is nothing in their provisions that is at all inconsistent with the provisions of the act of 1893, and they were not repealed by the latter act, but were in full force at the time of the empanelling of the grand jury that found this indictment. Jenkins vs. State, 35 Fla. 737, 18 South. Rep. ——. Those sections of the Revised Statutes, when considered together, provide, in substance, that when, for any cause no jurors (grand or petit) have been drawn or summoned as provided by law, the court shall issue a special venire directed to the sheriff commanding him to summon a sufficient number from the by-standers, or from the county at large, to complete the panel. Admitting everything set up by the plea in abatement to be true, it sets up nothing that can overthrow the

validity of the grand jury that found the indictment. For aught that is disclosed by the plea, a grand jury may have been drawn and summoned in accordance with the provisions of the act of 1893, as contended for by the plea, and because of sickness of the jurors so drawn and summoned they may not have been able to attend, in which event the draft from the by-standers or body of the county became proper under the provisions of sections 1158 and 2803 of the Revised Statutes. The sustenuation of the State's demurrer to the defendant's plea in abatement was proper.

The sixth assignment of error is the denial by the court of the defendant's motion for a change of venue. This motion was predicated upon, and supported only by an affidavit made by the attorney for the defendant, in which it is alleged that at the Fall term, 1893, of the Circuit Court for Orange county, one George A. Walker was tried and acquitted of the charge of murder of one Lewis Marat. That after his acquittal he was re-arrested and lodged in jail, and that subsequently two attempts were made by mobs in the town of Orlando to enter the jail and lynch him. That said mobs were composed of divers persons from various parts of Orange county; and that subsequently mass-meetings were held at two points in said county at which resolutions were passed denouncing his acquittal of said charge of murder, and assailing, in denunciatory language, the Judge who presided at said trial, the jury that acquitted him, and the counsel who defended him. The affidavit sets out at length the resolutions passed at these meetings, that are unnecessary to be reproduced here. That said resolutions were published in an Orange county paper and circulated throughout the county and engendered such a state of feeling in the minds of the citizens of Orange county

with regard to homicidal crimes that affiant verily be-
lieves that it will be impossible to empanel a jury of
twelve men who will be able to approach this case with
minds perfectly free from the influence and sentiment
that was so engendered as aforesaid, or will not in
some degree be swayed by the intense public and gen-
eral feeling or prejudice against persons charged with
homicide, and that such jury, if empanelled in said
county, will be unable to divest their minds of the
knowledge that public sentiment was aroused and pub-
licly expressed against a former jury who rendered a
verdict of acquittal in the above-mentioned case of
George A. Walker. That the killing with which this
defendant is charged took place in the immediate
neighborhood or in the vicinity of the place of the kill-
ing of said Lewis Marat, and this affiant has, there-
fore, additional reason for fearing that if the jury ac-
quit this defendant that they will render themselves
liable to be held up to the same kind of odium, and
receive the same kind of treatment as the jury in the
Marat case. Applications for changes of venue, as this
court has often reiterated, are addressed to the sound
discretion of the trial court, and the refusal of such
applications will not be held erroneous, unless it ap-
pears from the facts presented that the court acted un-
fairly and committed a palpable abuse of sound dis-
cretion. Leslie vs. State, 35 Fla. 171, 17 South. Rep.
555, and cases cited. In the same case it was held fur-
ther that the court's refusal of such an application
could not be held to be such a palpable abuse of its dis-
cretion as to warrant its being held to be error, where
the facts urged as a necessity for the change of venue
have no other support than the bare affidavit of the ac-
cused. Adams vs. State, 28 Fla. 511, 10 South. Rep.
106. In the case at bar the only proof offered in sup-

port of the application was the affidavit of the defend-ant's attorney, in which *he* expresses *his* fears that the defendant cannot secure a fair and impartial trial in Orange county. It is not even stated therein whether the defendant himself entertains such fears or not. The ill-advised resolutions, passed by the two citizens' meetings in the county and alleged to have been pub-lished in a county paper, that are exhibited in the body of the affidavit, and urged as evidence in support of the claim that the defendant can not procure an im-partial and unbiased jury for his trial in the county, are not aimed at the defendant or at the crime of which he was charged, but refer and relate to an entirely dif-ferent case having no connection whatever with the de-fendant, and certainly furnishes no evidence of the ex-istence in the county of any prejudice or ill-will against him, and they do not tend even to show any pre-judg-ment of the defendant's case in the minds of the inhab-itants of the county. Because the citizens of a county give extravagant utterance of their displeasure at the acquittal of one party tried for murder, furnishes no evidence that they are so warped and prejudiced as not to be able to sit in impartial judgment upon the trial of any one charged with a like offense. We can not adjudge the refusal of the application for change of venue to be error, under the showing made in its sup-port.

The seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth assignments of er-ror are all based upon the *refusal* of the court to give various instructions to the jury that were requested by the defendant. At the time of the refusal to give these proposed instructions no exception was noted or re-served to the rulings or refusal. The only attempt at any exception thereto is in the motion for new trial,

one of the grounds of such motion being the refusal of
the court to give such requested instructions, and ex-
ception was taken to the denial of this *motion for new*
*trial.* Under the provisions of section 2 of Chapter
3431, act of March 10th, 1883, brought forward and
embraced in the Revised Statutes as section 1092, only
such charges as were *actually given by the court*, and
that were *deemed erroneous*, could be made the sub-
jects of exception through the medium of embodiment
in a motion for new trial. This statute was never de-
signed to permit a motion for new trial to be used as
the medium by which to take *exceptions* to rulings of
the court *refusing to give instructions requested.*
That this statute will permit of no other construction
seems clear upon its face. Its language is: "Either
party after verdict rendered may embody in a motion
for a new trial any portion of the charge of the court
which he may deem erroneous, which shall be taken
as an exception to said charge." An instruction pre-
pared by counsel and *requested* to be given does not
become a "charge of the court" until the court passes
judgment upon it, approves of and *gives it* as the law.
And again, the statute permits the exception, through
motion for new trial, only to such portions of the
charge as may be "deemed erroneous." How could a
party who has *requested* a charge and had it refused,
deem any portion of *his own request* so erroneous as
to entitle him to except thereto by motion for new
trial, or in any other manner. From what has been
said, we can not consider the assignments of error pre-
dicated upon the refusal of the court to give these in-
structions, for the reason that no exceptions were noted
or taken to the rulings of refusal.

The sixteenth assignment of error is the asserted fail-
ure of the court to instruct the jury as to the definition

of the offense of murder in the first degree, murder in the second degree, and manslaughter. The record shows that the court did instruct the jury as to the statutory definition of murder in the first degree, but gave no definitions of any of the other degrees of murder or of manslaughter. There was no error in this, as there was no proof adduced in the cause even tending to establish murder in the second degree or manslaughter; and, besides this, the defendant nowhere appears to have requested any instructions upon murder in the second degree or manslaughter, and there is no exception taken to the court's omission so to charge.

The seventeenth assignment of error is the overruling of the defendant's motion for a new trial. We pass over this specific assignment inasmuch as the matters involved therein are fully disposed of in the consideration of the other assignments.

The eighteenth assignment of error is the alleged refusal of the court to allow a witness, Martin Shepherd, to testify as to defendant's mental condition on the night preceding the killing by defendant of Luther Walker, and page 68 of the transcript is referred to as being the place where the ruling is to be found. We find no such ruling as the one assigned for error. On page 68 of the transcript we find where the witness named was cut short by an objection of the State, in an answer to a cross-question by the defendant's counsel, in which he was proceeding to give his impressions as to the state of the defendant's mind, but there is no ruling by the court on the objection made, and no exception was taken by the defendant, but the defendant's attorney seems to have acquiesced in the propriety of the objection made, by proceeding, with-

out parley, to propound other questions to the same witness.

The nineteenth assignment of error is the refusal of the court to allow one J. O. Fries to testify as to the defendant's demeanor and language, as to whether it was intelligent or confused, at the interview between said Fries and defendant shortly before the killing. Page 91 of the transcript is referred to for the ruling. We find in the transcript that a question propounded by the defendant's counsel to this witness was objected to by the State, and the objection sustained by the court, but the ruling was not excepted to, and we, consequently, can not consider any assignment based thereon. Bogue vs. McDonald, 14 Fla. 66; Sanderson's Admrs. vs. Sanderson, 17 Fla. 820; Potsdamer vs. State, 17 Fla. 895.

The twentieth assignment of error is the refusal of the court (page 114 of the transcript) to allow the witness, Mrs. Davidge, to testify to a conversation between her and defendant immediately before the killing. The question propounded to this witness and objected to by the State, and ruled out by the court, was: *Question—* Did you have any conversation with Mr. Shepherd immediately before that killing of Luther Walker? It is not shown by the transcript of the record what, if any, material fact or facts the defense sought or intended to elicit from this witness by the question excluded. If it was intended as a prelude to an attempt to give rational and exculpatory declaration of the defendant prior to the killing, then it was properly ruled out. If it was intended simply to elicit the fact that the *witness* had seen, interviewed and observed the defendant just prior to the killing, then it was improperly framed to elicit such fact. There is not enough shown by the record to exhibit its materiality

or pertinency, and we can not adjudge it to be material error. In order to show that the expected answers to the excluded questions were material, relevant, or important, the defendant's counsel should have stated what they expected to show, and then, if the questions were ruled out, embodied the facts in a bill of exceptions, so as to present the point clearly. State vs. Lewis, 20 Nev. 333, 22 Pac. Rep. 241.

The twenty-first assignment of error is the refusal of the court to allow the witness, Mrs. Cox, (page 120 of the transcript) to explain the meaning and intent of a former answer made by her, to the effect that "during the whole of our stay (at defendant's house) I noticed it at different times, there was not the realty in things that should have been. There was no foundation for some things." The question as framed and put to the witness calling for this explanation tended to elicit the witness' opinion, instead of a statement of facts, and there was no error in its exclusion.

The twenty-second, twenty-third and twenty-fourth assignments of error are all the rulings of the court excluding testimony, to none of which rulings were any exceptions taken, and we can not, therefore, consider them.

The twenty-fifth and twenty-sixth assignments are also based upon the exclusion of certain portions of the depositions of the defendant's witnesses, W. R. King and Nettie King, taken on commissions. What it was that was excluded, or whether it was material or important, the record does not show; we will, therefore, have to indulge the presumption in favor of the correctness of the ruling of the court in excluding it. State vs. Lewis, *supra*.

The first, second, third and fourth assignments of error are, that the verdict was contrary to law, to the

evidence, to the weight of the evidence, and to the charge of the court. The only defense attempted by the accused was insanity. Unless the defendant was insane, then the case as made by the State was clearly murder in the first degree. Considerable evidence was introduced, chiefly from the near relatives of the defendant, that tended to establish insanity; but, on the other hand, there was an abundance of proof that, if believed by the jury, amply establish his sanity and responsibility for the crime. The whole matter was fully and fairly submitted to the jury upon the evidence and through ample and liberal charges by the court. The jury, by their verdict, have settled the conflicts in the evidence against the defendant, and we can not say that their finding is not entirely sustained by that evidence to which it was their exclusive province to give or withhold credence; and finding no material errors in the conduct of the trial, we do not feel justified in a reversal of their findings. The judgment of the court below is, therefore, affirmed.