GEORGE McK. TERVIN, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

CRIMINAL LAW—FORMER JEOPARDY—PLEA IN ABATEMENT—SEPARATION OF JURY.

1. Whenever, either in felony or misdemeanor, the judge discovers anything that will render a verdict against the prisoner void, or subject to be avoided by him, or will render it impossible that a verdict should be reached—anything, in other words, establishing that no jeopardy has really attached to the prisoner, and that any further progressing in the trial will be fruitless—he may adjudge the fact, put the adjudication on record, and discharge the jury. Then, the *prima facie* jeopardy appearing of record, matter nullifying it will appear also, and the defendant will be properly held for further proceedings.

2. Where the judge in a felony trial, with the consent of the accused, gives the jury permission to return a sealed verdict and to separate for the night after agreeing upon such verdict, and the jury during the night inform the officer having them in charge that they have agreed upon a verdict that they would seal up and deliver on the convening of court next morning, and thereby procure from such bailiff permission to separate and disperse, and do separate and disperse for the rest of the night, and on the assembling of court next morning they re-assemble and return the following as their verdict. "We, the jury, agree to disagree, so say we all," signed by their foreman: *Held*, That under these circumstances the judge, in the exercise of a sound discretion, has the power to declare a mistrial, and to discharge the jury without the defendant's consent, and that if the facts and the

adjudication thereon are placed upon record, it is not such a former jeopardy as will preclude another trial.

3. While section 1093 of the Revised Statutes confers upon juries the *legal right* to a discharge when the circumstances exist that are therein mentioned, yet it was not designed to abridge in any way the judicial discretion vested in the judge to order such discharge whenever a proper case is presented for the exercise of such discretion, even though the circumstances warranting such discharge were not such as would have clothed the jury itself, under this statute, with the right to *demand* it.

4. When there is any such irregularity in the drawing or impaneling of a grand jury that returns an indictment as would render it illegal or void, the proper way to make it appear is by plea in abatement, instead of by a motion to quash.

5. Pleas in abatement setting up defects in the drawing or impaneling of grand juries must be drawn with rigid strictness and certainty to every intent.

6. In trials for felonies, other than capital cases, if a separation of the trial jury before verdict is complained of, the burden is upon the defendant to show that he was injured by such separation, if he fails to show such injury, it is not ground for new trial, or for reversal on writ of error.

7. The ignorance of a thief as to the ownership of the property he steals does not excuse the larceny of it, if he knew at the time that the property did not belong to him.

Writ of error to the Circuit Court for Walton county.

The facts in the case are stated in the opinion of the court.

*Daniel Campbell, D. L. McKinnon* and *D. C. Campbell,* for Plaintiff in Error.

*The Attorney-General,* for Defendant in Error.

TAYLOR, J.:

At the Spring term, 1893, of the Circuit Court of Walton county, the plaintiff in error was indicted for the crime of larceny of a cow. At the Fall term, 1895, of said court he was tried and convicted and sentenced to imprisonment in the penitentiary for one year, and he brings this judgment here for reviewal by writ of error.

On the 27th day of October, 1893, the said defendant below filed the following plea in abatement: "Now on this day comes the defendant, and for plea says that on the 19th day of October, A. D. 1893, he was duly arraigned upon the indictment herein, plead not guilty, a jury of six lawful jurors were tried, empaneled and sworn to try the issue between him and the State; that the indictment was read to the jury; that the evidence for the State and himself was introduced; the counsel for the State and himself were heard by the jury, and the court delivered his charge to the jury. It then being a late hour in the evening, the jury were instructed that they might find a sealed verdict, should they agree upon a verdict before the opening of the court on the following day, and be present at the opening of the court the next morning to have their verdict opened in their presence; that during said night they informed the sheriff that they had agreed upon a verdict, whereupon he furnished them with an envelope to seal their verdict, and they then and there dispersed until the opening of the court next morning, the 20th of October, 1893, when in their presence the court opened their sealed envelope and found a slip of paper on which was written the following, to-wit: 'We, the jury, agree to dis-

agree, so say we all. Henry Farmer, foreman;' whereupon the said court did then and there dis- charge the said jury from the further consideration of said cause without his consent. Therefore defendant prays judgment of the court whether he shall be further held to answer said indictment, and to be dis- charged."

The State Attorney moved to quash this plea upon the ground that it did not set up any matter of de- fense, and because it is at variance with the record of the case in said court. No ruling appears from the record to have been made upon this motion, but, so far as the record shows, it seems to have been aban- doned by the State Attorney who, on the 2d day of May, 1894, filed a replication to the defendant's said plea in abatement, alleging that the proposition for the jury to find and return a sealed verdict, and to disperse after so doing until next day's sitting of the court, and the discharge of the jury by the court after their alleged disagreement, were all done by and with the consent of the defendant. The defendant demurred to this replication, which demurrer the court overruled. On the 21st of October, 1895, the State Attorney demurred to the defendant's said plea in abatement, and on the same day the defendant moved to strike said demurrer upon various grounds not necessary to mention. This motion the court overruled; whereupon the State's demurrer to the de- fendant's plea in abatement was heard and sustained by the court. All of these rulings are questioned, and constitute the first, second and third assignments of error. They present but one question, that is, whether the discharge of the jury by the Judge at the first trial, under the allegations contained in the de-

fendant's plea in abatement, was so unauthorized and devoid of necessity as would forbid any other or further trial of the defendant for the offense charged.

According to the allegations of the defendant's plea in abatement, and from the minute entries, it appears that at the former term of the court the defendant was put upon trial before a jury who, upon retiring to consider of their verdict at a late hour in the evening, were instructed by the court that if they agreed upon a verdict they could seal it up and present it next morning on the opening of the court. That during the night they informed the sheriff that they had agreed upon a verdict, whereupon the sheriff furnished them with an envelope in which they sealed up what purported to be a verdict, and then dispersed and separated. Next morning on the opening of the court they re-assembled, and the court on opening the sealed finding in their presence found it to be simply an announcement of an agreement upon their part to disagree, whereupon the court discharged them from further consideration of the case, and imposed a fine upon each of them. In Bishop's New Criminal Law, vol. 1, sec. 1036, the adjudged principles applicable to the authority of the court to discharge juries in criminal cases before verdict found, and the propriety of another trial thereafter is tersely and accurately summarized as follows: "Whenever, either in felony or misdemeanor, the judge discovers anything which will render a verdict against the prisoner void, or subject to be avoided by him, or will render it impossible that a verdict should be reached —anything, in other words, establishing that no jeopardy has really attached to the prisoner, and that

any further progressing in the trial will be fruitless—
he may adjudge the fact, put the adjudication on
record, and discharge the jury.    Then, the *prima
facie* jeopardy appearing of record, matter nulli-
fying it will also appear, and the defendant
will be properly held for further proceedings." 12
Am. & Eng. Ency. of Law, p. 364; Proffett on Jury
Trial, sec. 491.    The paper returned by the jury as a
verdict was nothing more than a declaration of their
inability to agree upon a verdict.    The misrepresenta-
tion made by them to the officer having them in
charge, to the effect that they had agreed upon a ver-
dict, by means of which they secured their separa-
tion, exposed them to not unreasonable suspicion.
Short vs. West, 30 Ind. 367.    In State vs. Madoil, 12
Fla., 151, this court has held that where there has
been a separation of the jury without the consent of
the court, and there is reasonable cause to apprehend
that any improper practice had taken place, or any
undue influence exerted over the jurors during their
separation, it will be the duty of the court, in the
exercise of a sound discretion, to set aside the verdict
and award a *venire de novo*.    In this case the plea in
abatement discloses a complete disbanding and sepa-
ration of the jury, procured by them through misrep-
resentation, and without the consent of the court.    It
cast upon their conduct such reasonable ground for
suspicion as would have justified the judge in setting
aside any verdict that they might afterwards have
found adverse to the defendant; and, coupled with
their declaration that they could not agree upon a
verdict, fully justified their discharge from the case,
and the ordering of another trial.    In Adams vs.

State, 34 Fla. 185, 15 South. Rep. 905, we held that section 1093 of the Revised Statutes was designed to put a limitation upon the right of the court to detain a jury indefinitely in any cause, after it is ascertained that on due and thorough deliberation it is impossible for them to agree upon a verdict; and that the statute conferred upon juries the legal right to be discharged from any cause, when, after due and thorough deliberation, they come into court for the second time, after being re-charged, and avow their inability to agree upon a verdict, without requesting further explanation of the law. While that statute confers the *legal right* to a discharge upon juries when the circumstances exist that are therein mentioned, yet we do not think that it was designed to abridge in any way the judicial discretion vested in the judge to order such discharge whenever a proper case is presented for the exercise of such discretion, even though the circumstances warranting such discharge were not such as would have clothed the jury itself, under the statute, with the right to demand their discharge. Under the circumstances disclosed by the plea in abatement—the misconduct of the jury and their declared inability to agree upon a verdict— we think the judge acted properly in discharging them, and that the trial of the defendant in which it occurred was not such a jeopardy as precluded his further trial for the offense charged. Dubbins vs. State, 14 Ohio St. 493; Hurley vs. State, 6 Ohio, 399; People vs. Olcott, 2 Johns. Cas. 301, S. C. 1 Am. Dec. 168; People vs. Goodwin, 18 Johns. 187, S. C. 9 Am. Dec. 203; United States vs. Perez, 9 Wheat. 579; State vs. McKee, 1 Bailey (S. C.), 651, S. C. 21 Am. Dec. 499. It will be observed that the defendant's

plea in abatement does not allege that the discharge was without necessity, but plants itself upon the absence of the defendant's consent to such discharge. The *consent* of the accused is not necessary to the proper discharge of the jury, if such discharge becomes otherwise necessary. It follows that the rulings of the court constituting the first, second and third assignments of error were proper, and must be sustained.

On the 25th of October, 1895, the defendant moved to quash the indictment and for his discharge upon the ground that "there is nothing upon the records of this court to show that the grand jurors who found the indictment were drawn in accordance with Chapter 1015 of the acts of the Legislature of A. D. 1891." This motion was overruled, and such ruling constitutes the fourth assignment of error. There is no merit in this assignment. If there was any such irregularity in the drawing or empaneling of the grand jury that found the indictment as would render such indictment void or illegal, the proper way to make it appear was by plea in abatement, instead of by motion to quash. Gladden vs. State, 13 Fla. 623. But even if the ground of this motion to quash had been embodied in a plea in abatement, it could not have availed the defendant. The fact that the proceedings had in the drawing of the grand jury were not put upon the records of the court, did not constitute such an irregularity in the drawing, summoning or empaneling of such jury as would render an indictment found by them illegal or void, but the requisite *recording* of such proceedings could have been had after as well as before the finding of the indictment

without in any manner affecting its validity. Keech vs. State, 15 Fla. 591.

After the overruling of the foregoing motion to quash the indictment, the defendant interposed a second plea in abatement embodying substantially the same matter as the motion to quash, which plea was demurred to *ore tenus* by the State Attorney, and the demurrer thereto was sustained by the court, and this ruling is assigned as the fifth error. There was no error here. What we have already said in reference to the propriety of the judge's refusal to grant the defendant's motion to quash the indictment applies with equal force to this plea. But, further, the plea in abatement was subject to demurrer because it was not drawn with that rigid strictness and certainty to every intent that is indispensable to such pleas; it does not negative the idea that the grand jury may have been drawn from the bystanders or body of the county at large as might with propriety have been done if no jury was otherwise properly drawn. Hodge vs. State, 29 Fla. 500, 10 South. Rep. 556; Reeves vs. State, 29 Fla. 527, 10 South. Rep. 901; Woodward vs. State, 33 Fla. 508, 15 South. Rep. 252; Shepherd vs. State, 36 Fla. 374, 18 South. Rep. 773.

The sixth assignment of error is that the court erred in making the rulings embraced in all of the foregoing assignments of error while the prisoner was absent. This assignment of error is without foundation in fact, as the record before us shows that the defendant was present at the time such rulings were made.

The seventh assignment of error is that the court permitted the jury to disband and the jurors to separate for the night without the defendant's consent.

There is no merit in this assignment. There is nothing to show but that the permitted separation of the jury was had with the defendant's consent, as he did not protest or object against it at the time; but even if there was a separation of the jury without his consent, it was for him to show that he was injured by such separation. No such showing is made; consequently there is no ground for complaint. State vs. Madoil, 12 Fla. 151.

At the trial L. B. Tervin was introduced by the defendant as a witness and testified, among other things, that he was a brother of the defendant, and had made inquiries of some of the State's witnesses as to the particulars of the crime. His testimony in chief tended strongly to benefit the defendant's cause. Upon cross-examination the State Attorney asked him if he had not tried to compromise the case with the owner of the stolen cow. The defendant objected to the question, but the objection was overruled, and this ruling constitutes the eighth assignment of error.

There was no error here. The fact sought to be elicited tended to show the bias of the witness towards the defendant, which it was competent for the State to show.

The defendant requested the Judge to give the following charge to the jury: "If, after considering all the evidence in the case, there remains any reasonable doubt upon your minds that the beast killed was the beast of Radford, or, if it was Radford's, that the defendant knew it, you will give the defendant the benefit of the doubt and acquit him." There was no error in refusing this instruction. If it had embraced the idea that if the defendant when he killed

the cow did so under the honest belief that it was his own property, and if the jury had any reasonable doubt as to his entertaining such honest belief at the time, they should acquit, it might have been proper to have given it; but the ignorance of the defendant as to whose cow he was killing would not excuse his larceny of it, if he knew at the time that it did not belong to him.

The tenth and last assignment of error is the over-ruling of the defendant's motion for new trial. The ground of the motion insisted on here is that the verdict was not supported by the evidence. Without any detail of it, we are of the opinion that the evidence in the case fully sustains the verdict found, and that there was no error in the refusal of the motion for new trial.

Finding no errors in the record, the judgment of the court below is affirmed.