WILLIAM J. KNIGHT, PLAINTIFF IN ERROR, VS. THE
    STATE OF FLORIDA, DEFENDANT IN ERROR.

1.  A plea in abatement in a criminal case alleging that at the
    time the indictment was found and presented another indict-
    ment for the same charge was pending against the defendant, is
    bad on demurrer.
2.  Dilatory pleas in criminal cases are required to be accurate
    and precise, free from ambiguity, and certain to every intent.
3.  The omission of the record in a criminal case to show a join-
    der in a demurrer is immaterial and can not be objected to
    ·after the decision of the demurrer.
4.  Upon indictments for assault with intent to commit any of the
    grades or degrees of unlawful homicide it will not be sufficient
    to show that the killing, had it occurred, would have been
    unlawful and a felony, but it must be found that the accused
    committed the assault with intent to take life, in order to sus-
    tain a conviction for an assault with intent to commit a felony.
5.  Where one assaults another with intent (but not a premedi-
    tated design) to kill him, and the assault is accompanied by
    an act which, if death had resulted therefrom, would have con-
    stituted murder in the second degree, under the statute
    defining this degree of homicide, the party committing
    the assault will be guilty of an assault with intent to com-
    mit the felony of murder in the second degree, but if
    there be no intent to kill, the party committing the assault can
    not be convicted for an assault with intent to commit a felony,
    even though the circumstances are such that had the party
    assaulted died the party committing the assault would have
    been guilty of murder in the second degree.

Writ of Error to the Circuit Court for Alachua
County.

The facts in the case are stated in the opinion of the
Court.

B. A. Thrasher, for Plaintiff in Error.

CARTER, J.:

At the Spring term, 1900, of the Circuit Court of
Alachua county, plaintiff in error was tried and convict-

ed upon an indictment found at that term charging that
he, William J. Knight, in Alachua county, on March 13,
1900, "in and upon one Ben Brown, with a deadly weap-
on, to-wit: a certain pistol which was then and there
loaded with gunpowder and leaden bullets, and by him,
the said William J. Knight, then and there held in his
hand, unlawfully, feloniously, of his malice afterthought
and from a premeditated design to effect the death of
the said Ben Brown, did make an assault, and he, the
said William J. Knight, did then and there unlawfully,
feloniously, of his malice aforethought and from a pre-
meditated design to effect the death of the said Ben
Brown, shoot off and discharge the said pistol so loaded
with gunpowder and leaden bullets aforesaid, at and up-
on the said Ben Brown, with intent then and there un-
lawfully, feloniously, of his malice aforethought and
from a premeditated design to effect the death of the
said Ben Brown to kill and murder the said Ben Brown,
contrary to the form of the Statute," &c. From the sen-
tence imposed this writ of error is taken.

The defendant filed pleas in abatement, to which a
demurrer interposed by the State was sustained. One of
these pleas alleged that at the time the indictment
was found and presented, another indictment for the
same charge was pending against the defendant. This
plea was bad and the demurer to it properly sustained.
Smith v. State, 42 Fla. ——, 27 South. Rep. 868. The
other pleas alleged that the grand jury which found the
indictment was not a legal body. It appears from the
allegations of these pleas that there was no Criminal
Court of Record in Alachua county; that the persons
constituting the grand jury were not summoned by
order of the presiding judge from bystanders or the

body of the county, or drawn from the jury box pre-
pared by the county commissioners for the year 1900,
by the judge or his order, or by the clerk in the presence
of the county judge or justice of the peace and sheriff
or his deputy; that the names of said persons were not
drawn from the jury box prepared by the county com-
missioners for the year 1900, and that the names of
such persons were not drawn by order of the judge
ordering the drawing of the names of thirty persons
from which when summoned and appearing a grand
jury was to be drawn to serve at the Spring term of the
court for the year 1900. The pleas also allege certain
irrelgularities in the preparation of the jury box for the
year 1900, which it is claimed rendered such box illegal.
Section 3, Chapter 4122, acts of 1893, requires the
board of county commissioners of the several counties
at a meeting to be held the first week in January of
each year , or as soon thereafter as practicable, to select
from the list of male persons qualified to serve as jurors,
and make out a list of a certain number of persons as
therein provided, properly qualified to serve as jurors.
Section 4 requires the clerk of the Circuit Court, under
certain specific directions, to write the names of the per-
sons contained in the list so selected on separate pieces
of paper and deposit them in a box to be closed and
kept in accordance with specific directions. Section 5,
as amended by Chapter 4386, acts of 1895, requires the
judge at every regular or special term, in open court, in
the presence of the clerk or his deputy and the sheriff or
his deputy, to draw from such box the names of thirty
persons to serve as jurors at the next succeeding reg-
ular or special term of the court. A list of the persons
so drawn in the judge's handwriting, together with the

slips containing the names of the persons drawn, are re-
quired to be deposited in an envelope, prepared as
therein directed, and delivered to the clerk, who under
certain regulations is required to open said envelope at
least fifteen days before the opening of the next term of
the court and to issue a venire to the sheriff requiring
him to summon the persons so drawn as jurors to ap-
pear at the ensuing term of the court, and on the open-
ing day of the next term of the court the judge is re-
quired to place the names of the thirty persons so sum-
moned, or as many as appear, in a box and draw there-
from the names of eighteen persons to serve as grand
jurors for the term, and the persons whose names re-
main in the box are required to serve as petit jurors for
the first week of the term. Section 6, as amended by said
act of 1895, requires the clerk under certain regulations,
to draw the thirty names from the box when the judge
has failed to do so as required by the preceding section.
Chapter 4736, acts of 1899, makes provision for obtain-
ing by drawing from the box, or summoning from the
body of the county, jurors grand and petit, where at a
term of the court it appears that none have been drawn;
or, if drawn, where the panel shall be quashed for any
cause. It does not appear from the record of the pleas
how the grand jury in this instance was obtained, nor
does it appear that a special term of the court was held
between the regular Fall term, 1899, and the regular
Spring term, 1900, nor that there had been a failure to
draw jurors for the term, nor that any panel had been
quashed at that term. There is no allegation in the
pleas showing that the grand jury for the Spring term,
1900, were drawn from the box prepared for the year
1900, or that the jurors were not duly selected from

thirty names drawn from the box by the judge at the previous term—the Fall term, 1899—and summoned and empannelled in accordance with the provisions of the statutes referred to. If so, the box from which they were drawn was prepared for the year 1899, and no irregularities in the preparation of that box are, alleged in the pleas. These pleas being dilatory, are required to be accurate and precise, free from ambiguity and certain to every intent. Miller v. State, 42 Fla. ——, 28 South. Rep. 208. For aught that appears, this grand jury may have been drawn in strict accordance with law from the box prepared for 1899, and if so, failure to draw them from the box prepared for the subsequent year or irregularities in the preparation of that box can not affect the legality of the jury so drawn.

The defendant failed to file a joinder in the State's demurrer to the pleas in abatement, and this omission was made the basis of a motion in arrest of judgment. The record shows that the counsel for the defendant and the State waived argument of the demurrer, and submitted the demurrer without argument for decision, and no objection based upon the failure to file the joinder was made until after verdict rendered upon his plea of not guilty. The motion in arrest on the ground stated was properly overruled, because the ommission of the record in a criminal case to show a joinder in a demurrer is immaterial, and cannot be objected to, after the decision of the demurrer. Commonwealth v. McCormack, 126 Mass. 298; Dixon v. State, 13 Fla. 631.

The following, among other instructions, was given by the court: "If the jury from the evidence, beyond a reasonable doubt, that the defendant Wm. J. Knight, at any time within two years before the finding of the in-

dictment in this case, shot one Ben Brown with a pistol, in Alachua county, Florida, from a premeditated design to effect the death of Ben Brown, or if the shooting was an act imminently dangerous to another and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual, then the jury should convict the defendant as charged in the indictment." The defendant excepted to this instruction as a whole and to that portion thereof which heads as follows: "If the shooting was an act imminently dangerous to another and evincing a depraved mind regardless of human life although without any premeditated design to effect the death of any particular individual, then the jury should convict the defendant as charged in the indictment." This indictment was framed under the same statute as that considered by us in Williams v. State, 41 Fla. 295, 26 South. Rep. 184, and we held that the gist of the offence denounced by the statute was the intent to commit a felony. We there said: "Upon indictments for assault with intent to commit any of the grades or degrees of unlawful homicide, it will not be sufficient to show that the killing, had it occurred, would have been unlawful and a felony, but it must be found that the accused committed the assault with intent to take life, for although an intentional or involuntary killing may in some cases be unlawful, and a felony, no man can intentionally do an unintentional act, and without the intent, the assault can not be punished under this statute, even though the killing, had it been committed, would have amounted to a felony." Under the statute (section 2380 Rev. Stats.) "the unlawful killing of a human being, when perpetrated from a premeditated design to

effect the death of the person killed or any human be-
ing, or when committed in the perpetration of or in the
attempt to perpetrate any arson, rape, robbery, or bur-
glary, shall be murder in the first degree; when per-
petrated by any act imminently dangerous to another
and evincing a depraved mind, regardless of human life,
although without any premeditated design to effect the
death of any particular individual, it shall be murder in
the second degree." If an unlawful homicide be perpe-
trated by an act imminently dangerous to another, and
evincing a depraved mind regardless of human life, but
from a premeditated design to effect the death of the
person killed or any human being, or when committed
in the perpetration of or in the attempt to perpetrate
any arson, rape, robbery or burglary, it is murder in the
first degree; otherwise it is murder in the second de-
gree, even though accompanied by an intent to kill,
provided such intent does not amount to a premedi-
tated design. We are, therefore, of opinion that where
one assaults another with intent to kill, and the assault
is accompanied by an act which, if death had resulted
therefrom, would have constituted murder in the second
degree, the party committing the assault will be guilty
of an assault with intent to commit the felony of mur-
der; but if there was no intent to kill, the party commit-
ting the assault can not be punished for an assault with
intent to commit a felony, even though the circumstan-
ces were such that had the party assaulted died, the
party committing the assault would be guilty of mur-
der in the second degree. The portion of the instruc-
tion objected to was erroneous, in that it omitted the
requirement that there must be an intent to kill. For
this error the judgment must be reversed.

We do not deem it necessary to consider any of the other errors assigned.

The judgment is reversed, and a new trial awarded.