Kelly v. The State of Florida—Syllabus.

SAM KELLY, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

CRIMINAL LAW—PLEAS IN ABATEMENT OF INDICTMENT BECAUSE OF DEFECTS IN GRAND JURY—CHARGES MUST BE PREDICATED UPON PROOFS—MOTIONS IN ARREST OF JUDGMENT FROM PART OF RECORD PROPER.

1. Pleas in abatement alleging defects in the drawing and empanelling of grand juries must be drawn with rigid strictness and certainty to every intent.

2. A plea in abatement of an indictment returned by a grand jury that attempts to allege illegality of such grand jury because of discrimination against negroes on the part of the county commissioners in the selection of the jury lists from which it was drawn, that fails to allege that there were any negroes in the county at the time the list was selected from which the grand jury was drawn, that found the indictment who were possessed of all the statutory

qualifications of jurors, and that fails to allege that there were any negroes in said county who were possessed of the statutory qualifications of "sound judgment;" and that fails to allege that the county commissioners knew, or had good reason to believe, at the time they selected such jury list, that there were negroes in such county possessed of the statutory qualifications of approved integrity, fair character, sound judgment and intelligence, does not meet the requisite strictness and certainty applicable to such pleas, and is bad on demurrer.

3. The rule is that charges must be predicated upon the facts in proof, and it would be error to charge upon a hypothesized state of facts that had no foundation in the proofs.

4. If a defendant on trial for murder desires a special instruction as to the form of a verdict of acquittal he should request it to be given, otherwise he can not complain of the court's failure to so charge, as it is not generally necessary to instruct specially as to the form of a verdict of acquittal.

5. Motions in arrest of judgment form part of the record proper, and when evidenced to an appellate court only in and by a bill of exceptions can not be recognized or considered by such court.

Writ of error to the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the court.

*C. L. Wilson* and *J. M. Calhoun,* for Plaintiff in Error.

*William B. Lamar,* Attorney-General, for the State.

TAYLOR, C. J.

The plaintiff in error, in November, 1901, was indicted, tried, convicted and sentenced in the Circuit Court of Jackson county for the crime of murder in the first de-

gree, and on the twenty-ninth of April, A. D. 1902, sued out writ of error from this court returnable to the present June term.

To the indictment the defendant interposed a plea in abatement as follows: "Defendant for plea in abatement to the indictment herein against him says that he is a negro resident of Jackson county, Florida, and the jury list of three hundred and ten names placed in the jury box for the year 1901 by the county commissioners of said county were all white men and from said list of white men were drawn the grand jurors that found the indi-ment herein against him, and the petit jury that is to try him at this term, and a large portion of the population of said county are negroes, and a large number of them qualified jurors and men of integrity and intelligence, and the names of the negroes were omitted from said jury list because they were negroes; wherefore defendant says that he is not indicted or being tried by his peers, and prays the judgment of the court whether he should make further answer to said judgment."

The State Attorney demurred to this plea upon the grounds, first, that said plea set up no fact or facts that would be a bar or in abatement to the indictment herein; second, that said plea alleges no discrimination against this defendant, or the colored race; third, that said plea is vague, indefinite and uncertain, and sets up nothing in bar or in abatement of said indictment. The court below sustained this demurrer, and this ruling is assigned as error. There was no error in this ruling. It is the settled rule in this court that pleas in abatement setting up defects in the drawing and empanelling of grand juries must be drawn with rigid strictness and certainty to every intent. Reeves v. State, 29 Fla. 527, 10 South. Rep. 901;

Woodward v. State, 33 Fla. 508, 15 South. Rep. 252; Jenkins v. State, 35 Fla. 737, 18 South. Rep. 182; Shepherd v. State, 36 Fla. 374, 18 South. Rep. 773; Tervin v. State, 37 Fla. 396, 20 South. Rep. 551; Knight v. State, 42 Fla. 546, 28 South. Rep. 759; Easterlin v. State, 43 Fla. 565, 31 South. Rep. 350.

Section 1 of Chapter 4122, laws of 1893, provides that grand and petit jurors shall be taken from the male persons above the age of twenty-one years who have resided in this State for one year and in their respective counties for six months, and who are citizens of the State of Florida. Section three of said act provides that the board of county commissioners of the several counties at a meeting to be held the first week in January of each year, or as soon thereafter as practicable, shall select from the list of male persons who are qualified to serve as jurors under the provisions of section one, and make out a list of not less than two hundred and ninety (290) nor more than three hundred and ten (310) persons, properly qualified to serve as jurors," who, in addition to the qualifications above mentioned, shall be such persons only as they know or have good reason to believe are of approved integrity, fair character, sound judgment and intelligence." The act then provides that each name so selected shall be written upon a separate slip of paper and so folded as to make the name thereon invisible, and all of these slips are placed in a box by the clerk of the Circuit Court to be kept by the clerk securely locked and sealed; and from this box grand and petit jurors are drawn, from time to time as required, by the judge, clerk and sheriff. The plea demurred to here was filed on the twenty-seventh of November, 1901. The presumption is that the county commissioners complied with the law by selecting the jury list

during the first week in January of that year. The alle-
gation of the plea is substantially that *at the time it was
filed* a large portion of the population of the county were
negroes, and that a large number of them were *then* qual-
ified jurors and men of integrity and intelligence, but
whether or not there were any negroes residing in the
county ten months previously when the county commis-
sioners selected the jury list is not stated. And again,
though the plea states generally that a large number of
the negroes of the county were qualified jurors and men
of integrity and intelligence, yet it fails to allege that any
of them were possessed of the other qualification pre-
scribed by the statute, that of *sound judgment*; and it
wholly fails to allege that the county commissioners, at
the time they selected said list, *knew*, or had good reason
to believe, any of them to be possessed of approved integ-
rity, fair character, sound judgment and intelligence;
which knowledge or information on the part of such com-
missioners was necessary to a compliance with the law in
making the selection of names for such lists. For these
reasons the plea here failed to meet the requisite strict-
ness and certainty applicable to such pleas, and the de-
murrer thereto was properly sustained.

At the trial W. P. Burke, James A. Finlayson and J. L
Behymer, witnesses for the State, were allowed, over the
defendant's objections, to testify to confessions made to
them by the defendant. There was no error in these rul-
ings. The proper predicate was first fully laid before the
confessions were permitted to go in, and the confessions
offered were clearly shown to have been freely and volun-
tarily made by the defendant, without any manner of
duress, or expectation or hope of reward or mitigation of
punishment. The witness Finlayson in testifying to the

confession made to him, stated on cross-examination that on an occasion prior to the making of the confession to him by the defendant he (Finlayson), had offered the defendant money to employ a lawyer to defend him if the defendant would give him certain information about one Adam Jones, another party, who was not connected in any way with the defendant's case, and the desired information with reference to him was not in any way connected with the defendant's case. By no contortion of reasoning can this offer of money to the defendant for information that it was supposed he had about another party and another matter wholly disconnected with the defendant's case be construed into such an inducement held out to the defendant as would render his subsequent confession voluntarily made inadmissible as evidence against him.

The defendant requested the court to give the following charge: "If you believe from the evidence that at the time of the killing, if you believe that defendant killed Holmes, that the mind of defendant was so clouded by pondering and brooding over wrongs done to his family by Holmes in stealing and carrying away his young daughter and continuing to hang around defendant's house annoying and harassing defendant and disturbing his family relations, and that such brooding over the wrongs done him by Holmes had unbalanced defendant's mind and obscured his reason, then defendant was not in that cool condition necessary to form the deliberate premeditated design which is an essential ingredient of murder in the first degree, even though he did the killing." The refusal of the court to give it was excepted to and is assigned as error. Without approving the proposition of law announced in this charge it is enough to say that there was no error in its refusal in this case for the rea-

son that aside from some evidence to the effect that the defendant suspected the deceased of enticing away his step-daughter, there was no testimony upon which to predicate the state of facts hypothesized therein. There was no evidence tending to prove that defendant's mind was at all affected or clouded by pondering and brooding over wrongs done to his family by the deceased, or that his reason was at all obscured thereby. The familiar rule is that charges must be predicated upon the facts in proof, and it would be error to charge upon a hypothesized state of facts that had no foundation in the proofs.

The following charge was given to the jury, duly excepted to and is assigned as error: "If the evidence convinces you beyond a reasonable doubt that the defendant unlawfully killed Holmes by shooting him as charged, or that he was present at the time aiding and abetting another who unlawfully and from a premeditated design to effect Holmes' death did kill him by shooting him as charged, and that in doing so the defendant acted from such premeditated design to effect Holmes' death as already defined to you, you will find him guilty of murder in the first degree." We discover no error in this charge. McCoy v. State, 40 Fla. 494, 24 South. Rep. 485.

The following charge was also given and excepted to, and is assigned as error: "The mere presence of the defendant at the time and during the act of killing would not, of itself, be sufficient to constitute him an aider and abettor in the commission of the act, but it is not essential in order to constitute him such that he should himself have fired the fatal shot, it is sufficient if at the time of the killing he was there present consenting to and encouraging the act, and ready if needed to give assistance to him who did the act." Neither do we discover any

error in this charge. It does nothing more than define an aider and abettor in the commission of a crime, and does so, as we think, correctly.

The sixth assignment of error is that the court erred in failing to charge the jury as to the form of their verdict in the event they found the defendant not guilty. There is no merit in this assignment. If the defendant desired an instruction as to the form of a verdict of acquittal he should have requested it, which he failed to do, and besides it is not generally necessary to give special instructions as to the form of a verdict of acquittal. Padgett v. State, 40 Fla. 451, 24 South. Rep. 145.

The seventh assignment of error is the denial of the defendant's motion for new trial. All of the grounds of this motion that can properly be considered on the transcript of record before us have already been disposed of except the contention therein that the verdict is not sufficiently sustained by the evidence. This contention is untenable. The testimony in the case abundantly establishes the defendant's guilt of a most cold-blooded assassination beyond any sort of doubt.

The eighth and last assignment of error is the denial of the defendant's motion in arrest of judgment. This assignment can not be considered for the reason that it has no proper foundation in the record. The motion in arrest of judgment is evidenced to this court only in and by the bill of exceptions, when it is matter of record and should have been included in the record proper in the case, and we are not authorized to recognize it when so presented. Caldwell v. State, 43 Fla. 545, 30 South. Rep. 814, and cases there cited.

Finding no error in the record, the judgment of the court below is hereby affirmed.