TOM PEADON AND SAM FOSTER, *Plaintiffs in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

CRIMINAL LAW—JURORS, CHALLENGES FOR CAUSE—RULINGS UPON UNDISCLOSED KNOWLEDGE OF JUDGE — EVIDENCE — EXCEPTIONS REPEATING CHARGES—IMPEACHMENT OF WITNESS.

1. Where a challenge of a juror for cause is overruled and the defendant subsequently rids himself of the obnoxious juror by a peremptory challenge, such ruling can not avail him in an

appellate court, if it is not made to appear that his quota of peremptory challenges was exhausted before the filling of the jury panel.

2. It is settled in Florida that the trial judge, in the exercise of a sound discretion, has the right to excuse a juror, although he may be competent to serve as such, and the exercise of such discretion is not error unless abused to the detriment of a defendant.

3. Trial judges should not permit private conferences with them in reference to any question or issue arising in the trial of any criminal cause before them, by the prosecuting attorney or anyone else. Defendants in criminal cases, particularly in capital cases, have the right to an open public trial, and to be fully apprised of everything in any manner affecting their rights in such trial, and it trenches close upon an invasion of such right to have the judge pass upon any question affecting their trial upon undisclosed facts within the secret knowledge of the judge, or secretly communicated to him by others.

4. Where a State's witness on direct or cross-examination does not testify anything with reference to a given fact or subject, it is not proper to permit him on cross-examination to be questioned as to what he may have said to others about such fact or subject; and if the defendant afterwards makes such witness his own, it is not then proper to permit him to question such witness as to what he may have told others about such fact or subject as substantive evidence thereof. What a witness may have said to others, while not under oath, in reference to any given fact is no proof of such fact.

5. It is not error to refuse to permit a witness to be cross-examined in reference to a subject upon which he has not testified in his direct examination.

6. Where charges are not excepted to in the trial court, they can not be made the subject of assignments of error before an appellate court.

7. It is not error to refuse to reiterate a charge that has already in substance been given to the jury.

8. Because the general character of a witness for veracity may be impeached or shown to be bad, it does not follow that a jury as a matter of law are obliged to disregard any or all testimony that he may have given in a particular case on trial. On the contrary, though his general character for truth may have

been shown to be bad, yet the jury may be impressed with the truth of his story in the particular case, and if they believe it to be true, it is their duty to consider it and to give it due weight, and not to disregard it merely because his general character for veracity has been impeached before them.

9. Motions in arrest of judgment form part of the record proper in a case, and have no place in a bill of exceptions, and when evidenced to an appellate court only by bill of exceptions can not be entertained or considered.

This case was decided by Division A.

Writ of error to the Circuit Court for Santa Rosa county.

The facts in the case are stated in the opinion of the court.

*Daniel Campbell & Son* for plaintiffs in error.

*J. B. Whitfield,* Attorney-General, for the State.

TAYLOR, C. J.—The plaintiffs in error, with William Foster and Milton Foster, were jointly indicted in the Circuit Court of Santa Rosa county for the murder of one W. J. Mercer. They were jointly tried, which trial resulted in the acquittal of William and Milton Foster and in the conviction of the plaintiffs in error of manslaughter, to review which they have taken writ of error from this court.

The first assignment of error is the refusal of the judge to sustain the challenge for cause made by the defendants to a venireman, one George Stewart. This talesman answered on the *voir dire* that he had formed and expressed an opinion in the case, but that it was not a fixed opinion, and that he could try the case according to the evidence as it came from the stand; and on cross-examination he stated that what he had heard would have considerable

weight with him, but that he supposed he could try the case by the evidence as it came from the stand, regardless of what he had heard. The defendants challenged him for cause, which challenge was overruled and to this ruling exception was taken. Even if the overruling of his challenge for cause was erroneous, which we do not decide, it can not avail the defendants here for the reason that it appears that they rid themselves of the obnoxious talesman by a peremptory challenge, and it is not made to appear whether or not their quota of peremptory challenge was exhausted before the filling of the jury panel. If such challenges were not so exhausted they were not harmed by the disallowance of such challenge for cause. *Green v. State,* 40 Fla. 191, text 194, 23 South. Rep. 851, and authorities there cited.

The second assignment of error is the ruling of the court in sustaining the State's challenge for cause of one Neil Campbell, a talesman. The facts with reference to this ruling are stated in the bill of exceptions as follows: "One Neil Campbell being called as a juror and examined as to his qualifications, answered that he was qualified, whereupon the State Attorney, after private consultation with the court announced that the State would challenge the juror for cause known to the court, whereupon the court ruled that the said challenge should be granted," to which exception was duly taken. It is settled here that the trial judge in the exercise of a sound discretion has the right to excuse a juror, although he may be found to be competent to serve as such, and the exercise of such discretion is not error unless abused to the detriment of a defendant. *John D. C. v. State ex rel. Julia V. H.,* 16 Fla. 554; *Ellis v. State,* 25 Fla. 702, 6 South. Rep. 768; *Edwards v. State,* 39 Fla. 753, 23 South. Rep. 537; *Mims v. State,* 42 Fla. 199, 27 South. Rep. 865; *Mathis v. State,* 45 Fla. 46, 34 South. Rep. 287. Nothing is exhibited in the record tending to show that these defendants were in any manner damnified

by this ruling. It is not shown that they were not tried by a perfectly competent and impartial jury. Neither is it shown that the State's peremptory challenges had been exhausted or even resorted to at all, or that the prosecution gained any undue advantage by the discarding of the juror, or that the defendants were in any manner injured thereby. Under these curcumstances the ruling of the court can not avail the defendants for reversal here. Before passing this assignment of error, however, we deem it incumbent upon us to caution the trial judges against the impropriety of permitting private conferences with them in reference to any question or issue arising in the trial of any criminal cause before them, by the prosecuting attorney or any one else. Defendants in criminal cases, particularly in capital cases, have the right to an open public trial, and to be fully apprised of everything in any manner affecting their rights in such trial, and it trenches close upon an invasion of such right to have the judge pass upon any question affecting their trial upon undisclosed facts within the secret knowledge of the judge, or secretly communicated to him by others.

The third, fourth, fifth and sixth assignments of error question the propriety of the court's ruling in refusing various questions by the defendants' counsel upon the cross-examination of a State's witness, Mrs. Josephine Mercer, and will be considered together. This witness was the wife of the deceased, and testified to having reached the dead body of her husband, where it lay in the woods about three-fourths of a mile from her house, among the first who got there after the tragedy, and she testified also that among the first to get there after she did was Mrs. Rebecca Foster, the wife or mother of one of the defendants, and that on being asked by Mrs. Foster what was the matter she, the witness, replied that "they killed my husband," upon which defendants' counsel on cross-examination asked her the following questions: "Did you tell her that you knew some-

Peadon et al. v. State.—Opinion of Court.

thing was going to happen, that he was the maddest man you ever saw, and that you ought to have followed him off that morning." And after testifying that she had seen Mr. Peaden, the father of the defendant, there that morning, she was asked the questions: "Did you have any conversation with him?" "Did you not say to Mr. Peaden when he told you his son had got shot, didn't you remark 'I knowed he would get it?'" She had also testified to a quarrel between the defendant Peaden and her deceased husband the evening (Saturday) before the homicide on Sunday morning, and the following question was asked her on cross-examination: "On that Saturday evening you say they had that disturbance, didn't you testify in the preliminary examination that your husband was the maddest man you ever saw?" All of these questions were objected to by the State Attorney and the objections were sustained by the court and these rulings constitute the third, fourth, fifth and sixth assignments of error. There was no error here. The witness had not testified to anything relative to the frame of mind that her deceased husband was in, either the morning of the homicide or the evening before, whether he was angry or in pleasant mood, or whether he had any intention of shooting or doing violence to the defendant Peaden or any one else, so that as a foundation for impeachment they were improper questions as she had testified to nothing that the questions propounded and rejected tended to impeach, and if the design of the questions were to draw from the witness the substantive fact that her husband was very angry the morning of the homicide or the evening before, or intended to do violence to the defendant Peaden or any one else, they were improperly framed for such purpose. If the latter was their design she should have been asked the question directly what was your husband's temper that morning or the evening before? Was he angry or in a pleasant mood? Did you have any reason to know that the defendant Peaden would get shot that morning? etc. In answer to

46 Fla.—6

questions so framed the witness' statement *under oath* as a witness would have been properly elicited in reference to the matter inquired about, but what she may have told others in reference thereto while not under oath was not competent evidence of the fact, and, as before stated, she had. not testified one way or the other as to her husband's frame of mind or intention, so that what she may have remarked to others in reference to it did not tend to impeach anything that she had testified about.

The seventh assignment of error is the ruling of the court in permitting leading questions to a State's witness, one Luther Mercer. There is no merit in this assignment. The only question we find objected to in the record to this witness on the ground of its being leading was in reference to the direction that the witness' deceased father went upon the appearance of the defendants upon the ground where the tragedy took place. The witness had testified in a confused way as to the geographical location of the different parties to the tragedy with reference to a trail through the woods, and the question objected to was legitimately framed to draw from the witness a clearer explication of his meaning, even though it tended to be leading.

The eighth, ninth, tenth and eleventh assignments of error question the propriety of the court's ruling in refusing to permit the defendants' counsel on cross-examination to propound the following questions to the State's witness H. E. Eldridge: After the witness had testified to finding a single barreled breech loading shot gun lying across the body of the deceased, the defendants' counsel asked the following question: "And it was a breech loading gun this man was shooting?" The witness answered "yes, that I found near his body." Here the State Attorney interposed an objection without stating any ground, and the judge sustained the objection but did not exclude the answer already given by the witness to the question objected to. So that no harm was done to the defendant by the ruling

made. The defendant then asked the witness the following question which was excluded, on objection by the State: "Did you find any empty shells or hulls there?" the same question being substantially repeated to the witness and excluded. Nothing was asked this witness on the direct examination as to empty gun shells, or as to finding any or looking for any about the scene of the tragedy, so that these questions were not in pursuit of the direct examination, and there was no error in excluding them. If the witness did find any empty shells, the defendants could have made him their witness and elicited the fact in chief, which they did do subsequently without objection. So also with the next question propounded and excluded on objection by the State. After the witness had answered on the cross-examination that he had seen some of the defendants on the scene of the tragedy the day he was there, he was asked: "Were any of them wounded?" The witness had not testified on the direct examination anything as to the presence of the defendants on the ground, nor as to any of them being wounded, and the question was, therefore, not in pursuit of the direct examination, and there was no error in its exclusion.

While the defendants were making out their defense they moved the court "to allow them to call the witness, Mrs. Mercer, for the purpose of propounding to her the questions she had been asked on yesterday which had been denied by the court," but the judge denied the motion, which ruling was excepted to and constitutes the twelfth assignment of error, but mis-numbered as the thirteenth. For the same reasons already announced as to why there was no error in excluding the desired questions to the witness Josephine Mercer on cross-examination, there was likewise no error in excluding them on direct examination as the witness of the defendants. The excluded questions related to the frame of mind that the deceased was in the evening before, and the morning of the tragedy, and as to the

deceased's intention to do violence to the defendant Peaden. If it was a fact that the deceased was very angry towards the defendants or any of them the evening before, or the morning of the homicide, or then intended to do violence to the defendant Peaden or any of the other defendants, and these facts were within the knowledge of the witness Mrs. Mercer, the proper way to have elicited such facts from her was to have questioned her directly as to such facts, or as to her knowledge of them, and not by an endeavor to prove by her what she may have told others with reference thereto on occasions when she was not a witness and not under oath. And, as before seen, she had not testified as a witness anything whatever relative to the deceased's frame of mind or as to his intention to shoot, or do violence to the defendant Peaden, and, therefore, whatever she may have told others in reference to these matters had no tendency to rebut or impeach anything in her testimony.

A State's witness, Dr. Eldridge, after describing the position of the dead body of deceased, and certain glancing wounds on his body and the lodgment of shot in the root of a dogwood tree a few inches from the body, that, from their position, must have been the same shot that caused the glancing wounds, and that must have been fired after the body was down on the ground, was asked the following question by the State Attorney: "How far would the man, a man of ordinary height, have to had to stand, how far off, to make that shot?" but the defendants objected to the question on the ground that it called for the opinion of the witness and was not a proper inquiry. The objection was overruled, to which exception was taken, and this constitutes the thirteenth assignment of error. In the record before us the witness does not seem to have given any answer to this question, and, therefore, the defendants were not injured thereby, even should it be held to have been an improper question.

The fourteenth, fifteenth and twenty-second assign-

ments of error question the propriety of parts of certain charges by the court to the jury. We find no exceptions to any of these charges in the record and they can not, therefore, be made the subjects of assignments of error here.

The sixteenth assignment of error is the refusal of the court to give a charge, numbered one, requested by the defendants. This charge had already been substantially and more accurately given by the court to the jury, and there was no error in the refusal to reiterate it.

The seventeenth assignment of error is the refusal of the court to give the following instruction requested by the defendants: "If you believe that the witness J. L. Maloy has been impeached, you will disregard his testimony." There was no error here. The witness named in the refused charge was one of the State's most important witnesses who testified to being an eye witness to the homicide. The defense introduced many witnesses who testified that his general character for truth and veracity in the community where he lived was bad, and that they would not believe him on oath. This testimony, in the language of the refused instruction, may be termed an impeachment in general terms of the witness Maloy, without being an impeachment of the particular testimony that he gave in this case. A witness having a general bad character for truth and veracity may sometimes tell the truth, and give evidence that is believed by a jury before whom it is deposed, notwithstanding his general habit of lying; and because his general character for truth may have been impeached, it does not follow that a jury as a matter of law are obliged to disregard any and all testimony that he may have given in a particular case on trial. On the contrary, though his general character for truth may have been shown to be bad, yet the jury may be impressed with the truth of his story in the particular case, and if they believe it, it is their duty to consider it and to give it due weight, and not to disregard it merely because

his general character for veracity has been impeached before them.

The defendants requested the court to give the following charge to the jury:    "Where one's life has been threatened, he may go wherever his legitimate business calls him, and should you find from the testimony that the life of the defendant Tom Peaden had been threatened by the deceased Mercer, and that the defendant Tom Peaden was going about his legitimate business and met the deceased Mercer under such circumstances as would cause a reasonably cautious man to believe that the deceased was going to execute his said threats, then he would be justified in acting upon appearances and in taking the life of the deceased;" but the judge refused to give this charge and gave in its stead the following:    "Where one's life has been threatened, he may go where his legitimate business calls him, and should you find from the testimony that the life of the defendant Tom Peaden had been threatened by the deceased Mercer, and that the defendant Peaden was at the time of the difficulty going about his legitimate business and met Mercer, and Mercer's acts and conduct were such as to lead a reasonably cautious and prudent man in the same situation that Peaden was then in to believe that his life was then in actual danger, or that he was in present imminent danger of some great bodily harm at the hands of Mercer, and his acts were or reasonably seemed to be necessary to protect him from the then impending real or apparent danger, and he was not the aggressor in bringing on the difficulty, and had used all other and reasonable means in his power, consistent with his own safety, to avoid the danger and to avert the necessity of taking Mercer's life, he would be justified in using such force and means, and only such force and means as were, or reasonably seemed to be, necessary to protect himself from such immediate impending danger; but he could not justify his acts on this ground if he was the aggressor in bringing on the

difficulty, neither could he justify his acts on the ground of self-defense, unless he had used all reasonable means within his power and consistent with his own safety to avoid the danger and avert the necessity of taking Mercer's life."

The refusal to give the requested instruction and the giving in its stead the said qualified instruction constitutes the eighteenth and nineteenth assignments of error. There was no error here. The substituted charge of the court stated the law more fully and accurately as applied to the facts in proof, and there was no error in the refusal to give the instruction as requested, and none in giving that upon the same point as framed by the court.

The defendants requested the court to give the two following instructions: "(b) It devolves upon the State to prove the defendants guilty beyond a reasonable doubt, and if you have a reasonable doubt as already defined to you, as to the guilt or innocence, you will find the defendants not guilty." "(c) Should you find the defendants not guilty, the form of your verdict will be, 'we, the jury, find the defendants not guilty.'" There was no error in refusing either of these two requested instructions for the reason that the court had already fully instructed the jury on the subject of reasonable doubt, and as to the form of verdict.

The defendants requested the court to give the following instruction: "If you believe from the evidence that at the time the defendant Peaden shot the deceased, Mercer had shot him or placed himself in a position to shoot him, and that Mercer, the deceased, on the evening before threatened to take the life of the prisoner or do him great bodily harm, then he would be justified in defending himself against the offered violence." But the judge refused to give this charge without the following proviso, and gave it with the following proviso: "Provided Peaden was not the aggressor in bringing on the difficulty, and used all reasonable means in his power consistent with his own safety to avoid the danger, and to avert the necessity of taking

Mercer's life, and provided he did not take Mercer's life after all real or apparent necessity for doing so had ceased." This is assigned as the twenty-first error. There was no error here. The proviso added to the charge by the judge stated the law correctly, and became necessary in view of the proofs in the case tending to show that the difficulty was brought about by the defendant Peaden and that he was the aggressor.

The twenty-third assignment of error is the denial of the defendants' motion for new trial. The only grounds of this motion not already disposed of are that the verdict of the jury is contrary to the evidence, and is unsupported thereby. Without reiterating it here, we think the evidence in the case amply supports the verdict. There were conflicts in it, but these have been settled by the jury, and nothing appears that would warrant this court in disturbing their settlement of such conflicts.

The twenty-fourth assignment of error complains of the denial of the defendants' motion in arrest of judgment. This motion is evidenced to us only in and by the bill of exceptions in the case. Such motions form part of the record proper in a case and have no place in a bill of exceptions, and when evidenced to an appellate court only by bill of exceptions can not be entertained or considered. *Roberson v. State*, 42 Fla. 223, 28 South. Rep. 424; *Caldwell v. State*, 43 Fla. 545, 30 South. Rep. 814; *Kelly v. State*, 44 Fla. 441, 33 South. Rep. 235; *Kemble v. State*, 45 Fla. 40, 34 South. Rep. 5.

Finding no error in the record, the judgment of the court below is hereby affirmed.

HOCKER and SHACKLEFORD, JJ., concur.

CARTER, P. J., and MAXWELL and COCKRELL, JJ., concur in the opinion.

[NOTE.—The record in this case does not disclose the subject of the conversation between the State Attorney and the judge, com-

mented upon in the opinion, but the reporter has learned from the trial judge, since the rendition of the opinion, that during the empanelling of the jury, and immediately upon the calling of the juror referred to, the State Attorney approached the judge and secretly informed him that the grand jury had just found a bill against the juror for a felony, but that no indictment had been returned for the reason that the State Attorney had not had the time to prepare the bill, but that he expected to do so at the next adjournment; that the bill would be brought in on the following morning, and that he wished to put the juror on notice at the earliest moment, in order that he (the juror) might prepare for trial the following week. The State Attorney then returning to his place at the bar challenged the juror for "cause made known to the court," and the court directed the juror to stand aside.]