LAFAYETTE CLEMONS, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

1. Where in charges given by the trial judge to the jury the following language is used, *viz*: "The instructions here given you numbered from 1 to 13 inclusive *embrace the law of the case* which you are to apply to the facts and circumstances as testified to by the witnesses and thus determine the question of the guilt or innocence of the defendants, or either of them," the use of the words "embrace the law of the case" is unfortunate; but when it clearly appears that the judge gave other charges of his own, and many instructions requested by the defendant, and in so doing used language which could not fail to impress the jury that he did not intend to astrict their consideration solely to charges numbered from 1 to 13, there is no reversible error.

2. When a defendant is convicted of manslaughter this court will not consider an assignment of error based on a charge upon murder in the second degree.

3. A charge in the following language, *viz*: "If you believe from the evidence that Lafayette Clemons began the difficulty with Smith and beat him, either with metallic knucks or a similar weapon, until Smith's death resulted, that the killing of Smith was not murder in any of the degrees as hereinbefore defined, and was not justifiable or excusable homicide as explained in these instructions, you should convict him of manslaughter," is not obnoxious to the objection that it assumes "metallic knucks or a similar weapon" were deadly weapons.

4. A defendant in a criminal case can not avail himself of an error in his own favor, or of an error in a charge given by the trial judge when the same error is embraced in instructions requested by him, and given by the judge.

5. A charge by the trial judge giving the jury a form for a verdict of conviction is not erroneous because it contains no allusion to the right or power of the jury to acquit. If a defendant desires a form of a verdict of acquittal, it should be requested.

6. A charge in the following language, *viz*: "The court further charges you that it is a presumption of law that every sane person intends the natural and reasonable consequences of his own free voluntary acts, and if a sane person unlawfully, wilfully and intentionally strikes another person with a deadly

weapon, it is an inference of law that he intends to cause great bodily harm or death," is not erroneous.

7. In the following charge, *viz*: "The court charges you as a matter of law that a deadly weapon is any weapon which is likely, from the use made of it at the time, to produce death or do great bodily harm," it is not erroneous to use the alternative phrase "or do great bodily harm," and while it would be more correct to use the statutory word *dangerous,* than the word *deadly,* the use of the word *deadly* in the charge does not constitute an error of which the defendant can complain.

8. Where a physician had testified that there was a comminuted fracture of the left cheek bone of the deceased, and also other wounds, and fractures of the inner table of the skull of the deceased, it was competent to ask the physician whether in his opinion as a physician, the comminuted fracture of the cheek bone could have been produced by a man's naked fist.

9. It is not erroneous for a trial judge to refuse to allow the defendant on cross-examination to ask a witness the question: "Was there anything said or done by either one or both of these parties that led you to believe or suppose that in going up the street they were going to hunt Thomas J. Smith (deceased)?" The question called for the belief or supposition of the witness.

10. The evidence has been examined and found sufficient to support the verdict.

This case was decided by Division A.

Writ of error to the Circuit Court for Hillsborough county.

The facts in the case are stated in the opinion of the court.

*Sparkman & Carter, Thos. Palmer* and *G. B. Wells* (with whom was *W. E. Baker* on the brief) for plaintiff in error.

*W. H. Ellis,* Attorney-General, for the State.

Hocker, J.—At the spring term, A. D. 1903, of the Circuit Court of Hillsborough county, Lafayette Clemons

and Samuel Clemons were indicted for the murder of Thomas J. Smith. The indictment contains two counts; in the first the homicide is charged to have been committed "with a certain deadly weapon, to-wit: a contrivance commonly known as 'metallic knucks,' a further and more definite description of which is to the grand jurors unknown;" and in the second count, "with a certain deadly weapon a more particular description whereof is to the grand jurors unknown." Lafayette Clemons in each count is charged as principal in the first degree, and Samuel Clemons is charged as being "present, unlawfully," etc., "aiding, assisting," etc., "Lafayette Clemons the murder aforesaid in manner and form aforesaid to do and commit." At the fall term, 1903, the case was tried, Samuel Clemons was acquitted and Lafayette Clemons was convicted of manslaughter and sentenced to imprisonment in the penitentiary for seven years. He seeks a reversal here by writ of error.

There are twenty-four assignments of error. Those argued here are 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 18, 19, 20, 21, 22, 23 and 24.

As the first assignment is based on the refusal of the court to grant a new trial and involves a consideration of the sufficiency of the evidence to support the verdict, we will first consider the other assignments.

The third assignment is based on the following language used by the judge in his own instructions to the jury, *viz*: "The instructions here given you numbered from 1 to 13 inclusive, *embrace the law of the case,* which you are to apply to the facts and circumstances as testified to by the witnesses and thus determine the question of the guilt or innocence of the defendants, or either of them." It is contended that this language had the effect of impressing the jury with the notion that the charges asked for by defendants and given by the court after his own instructions were given, were not to be considered by them as being any part of the law of the case. The words "embrace the

law of the case" were, perhaps, considered by themselves, unfortunate. We find, however, that the judge gave the charges requested by the defendant, read them to the jury, and that they contained language which could not fail to impress the jury with the conviction that they were given as portions of the law of the case. This is apparent from the fact that the judge withdrew from the consideration of the jury charges marked L, M, N, O, P, requested by the defendants, because they applied to degrees of unlawful homicide, of which from the evidence they could not be convicted. Moreover, the court gave, of its own motion, eight other charges. The irresistible inference is that the other requested charges should be considered by the jury. Under this assignment we find no reversible error.

The fourth assignment of error is based on an instruction as to murder in the second degree. Inasmuch as the defendant was acquitted of that degree, it is unnecessary to consider this assignment. *McCoy v. State,* 40 Fla. 494, 24 South. Rep. 485; *Richard v. State,* 42 Fla. 528, 29 South. Rep. 413. Moreover, the only attack made on this instruction is made upon and applies to the fifth issignment.

Fifth assignment. The court erred in charging the jury as follows: "If you believe from the evidence that Lafayette Clemons began the difficulty with Smith and beat him, either with metallic knucks or a similar weapon, until Smith's death resulted, that the killing of Smith was not murder in any of the degrees as herein before defined and was not justifiable or excusable homicide as explained in these instructions, you should convict him of manslaughter." It is contended that this instruction is faulty in two respects: first, that it assumes that metallic knucks or a similar weapon, were deadly weapons, and, second, that the court did not in this instruction define justifiable or excusable homicide. A careful reading of this instruction does not, in our opinion, reveal the first objection. Metallic knucks are not named as *per se* dangerous or deadly weapons. The defendant is only to be convicted if death resulted from

their use; and surely if a weapon as used produces death, it must in such a case be regarded as a dangerous or deadly weapon. Moreover, if the instruction was faulty in this regard, the defendant is in no situation to avail himself of it, for in two charges asked for by him and given by the court, metallic knucks are distinctly classed as and assumed to be deadly weapons, *viz*: in charges "A" and "U." Charge "A" is as follows: "Before the jury can find either of the defendants guilty of any offense under the indictment in this cause they must believe beyond a reasonable doubt from the evidence that one of the defendants, at the time of the difficulty with the deceased, was armed either with metallic knucks or some other deadly weapon, and that one of the defendants struck the deceased therewith, and that from said blow or blows the deceased died." A defendant in a criminal case will not be heard to complain of an error in his own favor, or of an error in instructions where the same error occurs in those given at his own request. *State v. Stewart,* 90 Mo. 507, 2 S. W. Rep. 790; Blashfield on Instructions to Juries, section 380; 3 Cyc. 248. Inasmuch as the court in his general instructions charged the law fully as to justifiable and excusable homicide, it was not necessary to define them again in this instruction.

Sixth assignment of error. What has been said as to the fifth assignment applies to the sixth.

Seventh assignment of error. This assignment is based on an instruction in these words: "If you find the defendant guilty you must state in your verdict the distinct degree of offense, whether of murder in the second degree, or of manslaughter, of which you convict them, or you may convict one of them of one degree and the other of a lower degree, or you may convict one and acquit the other."

The eighth assignment of error is based on the following instruction: "Should you convict both defendants, the form of your verdict should be: 'We, the jury, find the defendants, Lafayette Clemons and Samuel Clemons, guilty of (here state the offense). So say we all,' and let one of

your number sign as foreman. If you convict them of different degrees, or if you convict one and acquit the other, your verdict should· so state." It is contended that the judge nowhere charged the jury that they had the right to acquit both the defendants, and that the result of these two instructions could not fail to leave the impression on the mind of the jury that it was their duty to convict one of the defendants. It will be noted that these instructions were to guide the jury in making up their verdict, if they found the defendants or either of them guilty. It does not seem to us that they could have been otherwise understood; nor is the assertion correct that the judge nowhere charged the jury that they had the right to acquit both the defendants. In instruction "A," hereinbefore quoted, and in instructions "S," "T," and "U," each requested by the defendants, the court instructed the jury fully that under the circumstances stated in them, and covering the several features of the defense, the jury should acquit both of the defendants. Moreover if the defendants desired instruction from the judge as to the form of a verdict of acquittal it should have been requested. *Kelly v. State,* 44 Fla. 441, 33 South. Rep. 235.

The ninth assignment of error is based on the following charge of the judge: "The court further charges you that it is a presumption of law that every sane person intends the natural and reasonable consequences of his own free voluntary acts, and if the sane person unlawfully, wilfully and intentionally strikes another person with a deadly weapon, it is an inference of law that he intends to cause great bodily harm or death." The contention seems to be that inasmuch as the judge had already assumed that metalic knucks or any similar weapon was a deadly weapon, this charge was erroneous. The assumption, however, that metallic knucks or any similar weapon was a deadly weapon, was made by the defendants and not by the judge, and as this charge is taken from *Adams v. State,* 28 Fla. 511, text 552, 553, 10 South. Rep. 106, where it is approved, and is

applicable to the evidence, we can not perceive that it was erroneous.

The tenth assignment is based on the following charge: "The court charges you as a matter of law that a deadly weapon is any weapon which is likely, from the use made of it at the time, to produce death or do great bodily harm." The definition of a deadly weapon given in *Pittman v. State,* 25 Fla. 648, 6 South.. Rep. 437, is relied upon to show the charge to be erroneous. The court there says that a "deadly weapon is one 'likely' to produce death," and does not add, or "great bodily harm." The court in that case was dealing with a charge which defined a deadly weapon as one which is "capable" of producing death. Between the meaning of "capable" and "likely" the court draws a distinction. It had no occasion to go further. Our statute law does not use the word "deadly" in connection with excusable or other homicide. The phrase used is "dangerous weapon." Sec. 2379, Rev. Stats. of 1892. In Bishop on Statutory Crimes (3rd ed.) section 320, the phrases "deadly weapon" and "dangerous weapon" are discussed. It is said that the latter is a milder term than the former, yet otherwise of the same meaning. The definition given in the charge is taken from 2 Bishop's New. Crim. Law, section 680, and is also given in Bishop on Statutory Crimes, section 320. We find no error in the charge of which the defendants can complain, though it would be more correct to say "a dangerous weapon is one likely to produce death, or do great bodily harm."

The eighteenth and nineteenth assignments of error. The defendants requested the court to give the following instruction: "The court further instructs the jury that metallic knucks are not deadly weapons as a matter of law, but whether they are deadly weapons or not must be determined by the jury from all the facts of the case; the mere fact that death in a particular case has resulted from the use of a certain weapon does not in itself prove that the weapon was deadly, and only such weapons are deadly as are likely to produce death." The court gave this instruc-

tion with the addition "or great bodily harm." The eighteenth and nineteenth assignments are based on the refusal to give the instruction as originally written, and in giving it as modified. Applying what is said in regard to the tenth assignment we discover no error under these assignments. *Young v. State*, 24 Fla. 147, 3 South. Rep. 881; *Bacon v. Green*, 36 Fla. 325, 18 South. Rep. 870.

The twentieth assignment is based on the action of the judge allowing the State Attorney, over the objection of the defendants, to ask a physician the following question: "Doctor, in your opinion as a physician, could that wound have been produced by a man's naked fist?" The physician had testified that there was a comminuted fracture of the left cheek bone of the deceased Smith, or, in plain English, that the bone was broken to pieces and that the flesh of the cheek was very much bruised. There were also a number of wounds and fractures of the inner table of the skull described by the physician. It is contended that the physician could not be called on for the opinion which he gave in answer to the question that the wound could not have been produced by a man's naked fist, as that was a question for the jury to determine from the evidence. In support of this contention Rogers on Expert Testimony, pp. 128 and 129, is referred to. We have examined this authority and find that the statement of the law as given in the section (section 53) which embraces that referred to is not entirely harmonious as to the dividing line between matters of common knowledge and those in which a physician may give his professional opinion. In the case at bar we are of opinion that a physician who is by virtue of his profession better acquainted with the human anatomy and with the resisting power of the bones and tissues, should be allowed under the circumstances of this case, to answer the question whether in his opinion the wound or wounds described by him involving comminuted fractures of the cheek bone and of the inner table of the skull, could have been produced by a man's naked fist. Rogers on Expert Testimony, sec-

tion 42; *State v. Noakes,* 70 Vt. 247, text 255, 40 Atl. Rep. 249; *Carthaus v. State,* 78 Wis. 560, 47 N. W. Rep. 629; 12 A. & E. Ency. Law (2nd ed.) 448.

Our discussion of the twentieth assignment disposes of the twenty-first, twenty-second and twenty-third assignments, as similar questions are therein presented.

The twenty-fourth assignment is based on the refusal of the judge to allow defendants to ask a witness on cross-examination the following question: "Was there anything said or done by either one or both of these parties that lead you to believe or suppose that in going up the street they were going to hunt Thomas J. Smith?" It seems to us that the trial judge was clearly right in his action. The question called for the belief or supposition of the witness. *Camp v. Hall,* 39 Fla. 535, text 571, 22 South. Rep. 792.

We now revert to the first assignment of error based on the refusal of the trial judge to grant a new trial. In the argument no specific ground of the motion is mentioned, but we take it that the contention is that the verdict is not sustained by the evidence, is contrary to the charge of the court, and that the jury did not give the defendant the benefit of every reasonable doubt as to the use, or non use of a deadly weapon, and the cause of the death of Smith. We do not deem it necessary to detail the testimony in this opinion. We have examined it carefully, and we discover nothing in it which inclines us to think the assignments, or any of them, well taken. The record, in our opinion, shows that the trial judge was eminently fair in all his rulings, and if any errors were committed they were on the side of the defendant, of which he has no right to complain.

The judgment is affirmed.

TAYLOR, C. J., and COCKRELL, J., concur.

CARTER, P. J., and SHACKLEFORD and WHITFIELD, JJ., concur in the opinion.