WILLIAM McNAIR, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

1. Under a plea of not guilty, the presumption of innocence of the accused follows him until his guilt is proven beyond a reasonable doubt.

2. In a criminal case, the establishment of a *prima facie* case does not take away from the defendant the presumption of innocence, but leaves that presumption to operate in connection with, or in aid of, any proofs offered by him, or arising out of the evidence to rebut or impair the *prima facie* case made out by the State. A circumstance aided by that presumption may so far rebut or impair the *prima facie* case, as to render a conviction upon it improper.

3. Although by statute certain facts are made presumptive evidence against the defendant in a criminal case, if he denies

them and adduces proof in rebuttal, the jury must be satisfied of his guilt beyond a reasonable doubt.

4. To constitute the crime of breaking and entering or entering without breaking with intent to commit a misdemeanor the defendant must have had an intent to commit the misdemeanor in the house. This intent is the gist of the offence, and it is not necessarily implied from the simple fact of entering the house.

5. The question whether the defendant had a criminal intent is one of fact to be decided from all the circumstances of the case.

6. Evidence examined and found insufficient to support a verdict of guilty of entering a dwelling house with intent to commit petit larceny, although the defendant was found in the house.

This case was decided by Division B.

Writ of error to the Criminal Court of Record for Duval County.

*F. D. Brennan,* for Plaintiff in Error;

*Park Trammell,* Attorney General, for the State.

PARKHILL, J.—The information charges that William McNair "did feloniously enter a certain building, to-wit: the dwelling house of one W. M. Toomer, there situate, with intent then and there to steal, take and carry away the goods and chattels of another of the value of less than twenty dollars." The defendant was convicted as charged in the information and sentenced to be confined in the State prison for one year. From this judgment he seeks relief by writ of error.

Under the assignments, it is urged that the verdict is contrary to the law and the evidence and that defendant had no criminal intent in entering the building.

We are of the opinion that the evidence does not sustain the verdict. Mrs. E. C. Budd was a guest at the home of Mr. Toomer. About two o'clock in the morning she heard some one shaking the front door. She heard nothing more, but got up and raised two or three windows and looked out, but saw nothing. She thought she heard some one talking. She went back to bed, but could not sleep, and felt that some one was in the house. She telephoned for a policeman and about 4:30 a. m. officer Tyler came. Day was just breaking. She and the officer went into the front room and found the defendant there. He had no hat, coat or shoes. The defendant, according to officer Tyler, was in the room, between the lounge and the window or wall and looked like he was trying to get out of the room.

Upon cross-examination Mrs. Budd testified "that nothing was broken to show how defendant entered; that the windows were closed; she saw no clothing there belonging to defendant; that she made a noise raising and lowering the windows; that defendant had plenty of time to get away if he wanted to go; that it was two o'clock when she heard the door being shaken and that it was four thirty when the officer came; that when arrested defendant appeared to have been drinking but was not drunk; that nothing was removed or disturbed in the room; that the only noise she heard was when some one shook the door."

Officer Tyler testified that "he saw no place broken where the defendant might have entered the house; there was no window broken that I saw; the defendant did not have his hat, shoes or coat; I saw none of his clothing about the premises; there was a lounge in the room, but I don't know whether he was sleeping on it; he was not armed; he was not drunk, but appeared to have been drinking."

The defendant testified as follows: "My name is W. B.

McNair and my home is in Matthews, Georgia; I have been in Jacksonville several weeks and during that time I have been drinking heavily; on the day before I got into Mr. Toomer's house I was taken out of the city jail by a friend; I had been placed in the city jail by the police for being drunk; this friend got me out and I received the money from home and bought a new suit of clothes, a hat and a pair of shoes; I then went with my friend to take the train for my home in Matthews and bought a ticket to go; later before the train left I got off to get another drink and kept on drinking that morning; I really do not remember where I went that morning or afternoon; I do not know how I got into Mr. Toomer's house; all I know about it is that sometime early in the morning I heard a bell ring which woke me up, and I was sleeping on a lounge in Mr. Toomer's house; I raised up to look for my hat and coat and at that time the officer came into the room and arrested me; I did not take anything or break into the house that I remember of. All I can state is that I was drunk when I went into the house, and evidently somebody took my hat, coat and shoes before I got to Mr. Toomer's. I belong to good people and never stole anything in my life. I do not know anything about the matter except what happened after the officer came in."

"No cross-examination."

Section 3287 of the General Statutes is as follows:

"In a trial on the charge of breaking and entering, or entering without breaking, a dwelling house with intent to commit a misdemeanor, or with intent to commit a felony, proof of the entering of such dwelling house in the night time stealthily, without consent of the owner or any occupant thereof, shall be prima facie evidence of entering with intent to commit a misdemeanor in the absence of proof of intent to commit any specific crime." The

defendant may rebut this presumption by proper proof. Massey v. State, 50 Fla., 109, 39 South. Rep., 790.

There was a plea of not guilty and the presumption of innocence of the defendant followed him until his guilt was proven beyond a reasonable doubt. Vickery v. State, 50 Fla., 144, 38 South. Rep., 907; Reeves v. State, 29 Fla., 527, 10 South. Rep., 901. In a criminal case the establishment of a prima facie case does not take away from the defendant the presumption of innocence, but leaves that presumption to operate in connection with, or in aid of, any proofs offered by him, or arising out of the evidence to rebut or impair the prima facie case made out by the State. A circumstance aided by that presumption may so far rebut or impair the prima facie case, as to render a conviction upon it improper. Allen v. United States, 164 U. S., 492, 17 Sup. Ct. Rep., 154; Ogletree v. State, 28 Ala., 693. Although by statute certain facts are made presumptive evidence against the defendant in a criminal case, if he denies them and adduces evidence in rebuttal, the jury must be satisfied of his guilt beyond a reasonable doubt. State v. Rogers, 119 N. C., 793, 26 S. E. Rep., 142.

Conceding the State made out a prima facie case under the statute, we think the evidence in this case, aided by the presumption of defendant's innocence, so far rebutted or impaired the prima facie case as to render a conviction upon it improper.

The defendant was not charged merely with the unlawful entry of a dwelling house. To constitute the crime charged, the entry of the dwelling house with the intent to commit petit larceny, the defendant must have had an intent to commit the misdemeanor in the house. This intent is the gist of this offence, and it is not necessarily implied from the simple fact of entering the house. Jenkins v. State, 58 Fla., 62, 50 South. Rep., 582. The question as to whether the defendant had the criminal intent is a

question of fact to be decided from all the circumstances of the case.

It was not essential to the innocence of the defendant to show that he was drunk when the officer found him in the house at half past four in the morning. The defendant may have been drunk at two o'clock when he entered and slept the drunk off by four thirty when discovered. All the evidence on the part of the State and the defendant shows that he appeared to have been drinking when he was found in the house. The defendant testified without contradiction that he had been drinking heavily for several weeks, and on the day before he got into Mr. Toomer's house he had been placed in the city jail by the police for being drunk, and had been released. This could have been contradicted if it were untrue; and the police officer admitted that the defendant had been put in jail. He testified that after he went to the train to return to his home he got another drink and kept on drinking that morning and does not remember where he went, and was drunk at the time he went into Mr. Toomer's house. This statement finds strong corroboration in the fact testified to by the witnesses for the prosecution that he was found in the house without hat, shoes or coat, and none of his clothing was found on the premises, although he had bought a new suit of clothes, a hat and a pair of shoes the day before he entered Mr. Toomer's house. It is not likely that he would have removed his coat and hat to aid him in getting into the house without discovery. He did not enter by a window—all the windows were closed. He evidently went into the house through the front door, as he would have done, if, in a drunken stupor, he went into the wrong house to find a place to lie down. The door was not broken. It opened when he shook it. It must have been left un-locked. There was no evidence that it was locked. It may have been left unlocked for Mr. Toomer's return, as the evi-

dence shows he was not at home. He turned into the front room, and there is no evidence that he went elsewhere in the house from two to half past four o'clock. He was found standing near a sofa, which corroborates his statement that he was sleeping there when he heard a bell ring, evidently the front door bell that officer Tyler rung when Mrs. Budd let him into the house. Nothing in the room was disturbed, and the defendant remained there for two hours and a half, having plenty of time to get away if he desired to do so, although Mrs. Budd made a noise raising and lowering two or three windows. Evidently the man went into the first room he came to, fell asleep upon the sofa, and remained there until he was aroused by the officer at day break. Every circumstance indicates clearly that he was seeking a place where he could sleep off his drunken stupor, where he would be safe from the police, and that he had no intent to commit petit larceny. It is very likely that some one removed and took away defendant's hat, shoes and coat, before he went into the house, or after he got into the house, for Mrs. Budd says she thought she heard some one talking when she heard some one shake the door bell, after she got up and looked out. There is no evidence whatever that tends to prove the charge against the defendant, except his presence in the house and that is not sufficient. Jenkins v. State, *supra.* The crime proven may have been a drunken trespass— nothing more. Clearly it was not an entry with intent to steal. Every circumstance shows the defendant went to the house with intent to sleep off a drunk and not with intent to steal. He approached the front door instead of the back door or the windows. He shook the door like a drunken man instead of trying it quietly as a thief would do. He was found near the sofa where he would have been if he intended to lie down, and not near the sideboard or other places where silver-ware is usually kept. He was

found without his shoes, coat and hat, prepared to sleep, and he evidently slept for he did not hear the noise that was calculated to frighten away a thief. He was found in the front room where only large pieces of furniture like a sofa are usually kept, and not in other rooms where he might have found jewelry and wearing apparel. He took nothing in the house except a nap. He gave the most reasonable explanation of his presence in the house. Certainly his reasonable explanation, with other circumstances, would raise a reasonable doubt of his guilt. The jury must have misunderstood the effect of the statute.

It may be that the person who took away defendant's hat, shoes and coat, conducted him to the house and opened the door, assisted him to the sofa and removed these articles. When the writer was prosecuting attorney for the Criminal Court of Escambia County, he prosecuted a man who found a drunken sailor upon the street, accompanied him to the lot back of the house, opened a gate that he told the victim was the door of a house, and laid him down upon the ground that the man said was a bed, and removed his shoes and handkerchief that were later traced to the possession of the defendant. The victim had no coat on. The defendant was convicted.

No attack was made on the information, but it does not charge, in the language of the statute, that the entry was without breaking.

The judgment is reversed.

TAYLOR and HOCKER, J. J., concur;

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.