GEORGE P. ROE, and JEROME J. ROE, *Plaintiffs in Error*, v. STATE OF FLORIDA, *Defendant in Error.*

Division A.

Opinion filed December 5, 1928.

724

*McFarlane, Pettingill, MacFarlane & Fowler,* Attorneys for Plaintiffs in Error;

*Fred H. Davis,* Attorney General, and *H. E. Carter,* Assistant, Attorneys for Defendant in Error.

BROWN, J.—Plaintiffs in error were convicted in the criminal court of record of Hillsborough county of burning a building with the intent to injure a certain named insurance company, and the judgment of conviction is brought up for review on writ of error.

The information was filed under Sec. 5111 of Rev. Gen. Stats., which was repealed by Chap. 11812 of the laws of 1927, now appearing as Secs. 7208-7212, Compiled General Laws of 1927. However, the crime, if any, was committed, the prosecution begun, and the trial had, before the statute was repealed, though judgment and sentence were not entered and imposed until subsequent to such repeal. But under Sec. 32 of Article 3 of the constitution, the repeal of this section of the revised general statutes was without effect upon the prosecution and progress of this case. It might be observed in this connection that the repealing statute contained among its positive provisions a section which the Legislature no doubt intended to cover cases of this sort. But neither the meaning nor the validity of such repealing act are pertinent to the case now before us.

Sec. 5111, Rev. Gen. Stats., under which this prosecution was brought, reads as follows:

"Whoever burns a building or any goods, wares, merchandise or other chattels, which are at the time insured against loss or damage by fire, with intent to injure the insurer, whether such person is the owner of the property burned or not, shall be punished by imprisonment in the State prison not exceeding twenty years."

The information against plaintiffs in error was in three counts, the first count charging them jointly with burning a one-story frame building situate on Butler avenue, in Belmont Heights, Hillsborough County, Florida, which was insured by The Importers & Exporters Insurance Company, a corporation, with intent to injure the insurance company. In the second count George P. Roe was charged as principal, and Jerome J. Roe as accessory before the fact, and in the third count Jerome J. Roe was charged as principal, and George P. Roe as accessory before the fact.

A motion to quash the information was filed, which ques-

tioned the sufficiency of the information in respect to the description or identification of the building alleged to have been burned. The motion to quash also made the point that the failure to alleged the ownership of the building burned was fatal to the sufficiency of the information. At common law, such allegation in an indictment for arson was undoubtedly essential, so as to show that the building was the property of another, and many modern cases add the further reason that the allegation of ownership is appropriate and necessary to the proper identification of the offense; and such is the general practice even where ownership in another is not expressly made an ingredient of the statutory crime. 5 C. J. 563, and cases cited. And this Court has often held that in prosecutions under our burglary statutes, it is essential to the indictment that ownership of the building entered be alleged. Addison v. State, 95 Fla. 737, 116 So. R. 629. But it would appear that where the burning of a building, with a specific intent, and regardless of whether it was owned by the offender or not, is made the gist of a statutory offense, an allegation of ownership might not be absolutely essential to the sufficiency of an indictment or information, except as such description might prove to be needful to the proper identification of the building burned, so as to defeat any second prosecution for the same offense. U. S. v. McBride, 18 D. C., 371, 286. It is not necessary here to determine whether this allegation was essential under said Section 5111; but, without it, the description of the building burned, as contained in the information, is hardly sufficient to properly identify. it. The description as contained in the information:

"A one-story frame building situate on Butler avenue, in Belmont Heights, Hillsborough County, Florida,"

is very vague. There may have been a number of one-story

buildings situate on the street named, for aught that appears in the information. If it were in fact the only building of that character on that street in Belmont Heights, and this fact had been alleged in the information, the identification might have been sufficient to avoid the danger of a second prosecution for the same offense, but as it stands and not being aided by an allegation of ownership, the building burned is not identified with that certainty and definiteness which an indictment or information for such a grave criminal offense should contain. It does not appear that this Court has ever passed upon this identical question, but in each of the following cases, which have been considered by this Court, the defendant was charged with burning property with the intent to defraud an insurance company, and in each instance the information alleged the ownership of the property: Bryant v. State, 103 So. R. 170, 89 Fla. 26; Latham v. State, 102 So. R. 551, 88 Fla. 310; Hall v. State, 107 So. R. 246, 90 Fla. 719; Walker v. State, 90 So. R. 376, 82 Fla. 465. See also Goff v. State, 60 Fla, 13, 53 So. R. 327. On account of the indefiniteness of allegation in the respect above pointed out the motion to quash the information should have been sustained.

The motion to quash also attacked the accessory counts, being the second and third counts of the information, because these counts failed to charge that the defendants were accessories with intent to injure the insurance company. Thus the second count charges defendant George P. Roe with the burning of the building with the intent to injure the insurance company and charges that the defendant, Jerome J. Roe, before the commission of the felony alleged, had "unlawfully and feloniously counseled, hired, commanded, incited, moved, encouraged and otherwise procured the said George P. Roe to do and commit the said felony and arson in the manner and form aforesaid, against

the form of the statute in such case made and provided.''
As the information had charged the principal with burning
the building with intent to injure the insurance company,
and the accessory procured him to burn it in the ''manner
and form aforesaid,'' against the form of the statute in such
case made and provided, there is some ground for the con-
tention that this form of allegation impliedly charged that
the accessory procured the burning also with the intent on
his part to injure said insurance company. But in criminal
pleading, little is left to implication. The essential elements
of an offense must ordinarily be alleged with a reasonable
measure of certainty. In the case of Latham v. State, 88.
Fla., 310, 102 So. R. 551, the indictment expressly charges
that the accessory counseled and encouraged, etc., the prin-
cipal to commit the act with intent to injure the insurance
company, but while the indictment appears to have been
considered sufficient, this particular point was not dis-
cussed. But it was held in that case, and also the case of
Hall v. State, 90 Fla. 719, 107 So. R. 246, that intent to
injure the insurance company is under statute an essential.
ingredient of the crime, and that the burden of proof was
upon the State to prove the same. In the case of Smith v.
State, 71 Fla. 97, 70 So. R. 943, it was held that where an in-
dictment for being accessory after the fact charges that the
defendant, with intent that another felon should escape
detention, arrest, trial and punishment, did maintain and
assist such felon by then and there agreeing, etc., with no
allegation that the means specifically stated as being used
were used with the intent which is made an essential ele-
ment of the statutory offense, the indictment is fatally de-
fective. In the case of Savage and James v. State, 18 Fla.
909, it was held that a charge to a jury on a trial of two
persons for murder, one Savage as principal, and the other,
James, as principal in the second degree, that if James was

present aiding and abetting he was guilty of the same offense (murder in the first degree) was erroneous. The court held that "it should be shown that the person aiding and abetting, in order to convict him of murder in the first degree, knew or believed that the principal intended to kill, or that the person aiding and abetting him acted upon a premeditated design to take life." As the very gist of the offense under the statute is the intent to injure the insurance company, application of the reasoning employed in these cited cases leads to the conclusion that each of these accessory counts was defective, in that they failed to allege that the acts alleged to hace been done by the alleged accessories were done with the intent to injure the insurance company. This ground of the motion to quash was also well taken.

One of the defendant's witnesses, Leroy Hinson, was on cross examination by the State, asked if he had ever been convicted of any crime. To this question, the witness gave an affirmative answer. Upon being recalled by the defendant and examined with regard to this subject it developed that the so called "crime" of which he had been convicted was merely a conviction for a violation of a municipal ordinance of the City of Tampa, prohibiting drunkenness. Sec. 2706, Rev. Gen. Stats., now appearing as Sec. 4373, Comp. Gen. Laws of 1927, provides that with the exception of the crime of perjury, conviction of crime will not disqualify a witness but evidence of "conviction of crime" may be given to affect the credibility of such witness. The question arises: Does the conviction in a city court of the violation of a municipal ordinance amount to a conviction of crime within the meaning of the above statutes? The courts appear to have answered this question in the negative. See 40 Cyc., 2611, and two well annotated cases, viz: State v. Crawford, 58 Ore., 116; 113 Pac. R. 440;

Ann. Cas. 1913A, 325, 327; Redsecker v. Wade, 69 Ore., 153, 138, Pac. R. 495, Ann. Cas., 1916 A., 269, and note beginning on page 274. It appears that the weight of authority is quite well settled to the effect that, in order for a conviction of crime to be admissible as affecting the credibility of a witness, it must be a conviction of an offense against "the law of the land"; that no offense is a crime as used in this sense, which does not violate the law of the land; and it is well established that a conviction for a violation of a municipal ordinance does not come within this category and is not admissible as affecting the credibility of a witness. Paralleling the old common law rule as to disqualification, it is quite generally held that conviction of any felony is admissible in this connection, but in some jurisdictions a conviction for a misdemeanor is not considered sufficient. Nor is the mere fact that the violation of a municipal ordinance was based upon facts which also constituted a violation of a state criminal statute considered sufficient. It must be a conviction of a *crime,* in violation of a law of the State—a case wherein the prosecution runs in the name of the State. It also appears that in some of the states, in order to be admissible, the conviction must be of an "infamous" crime, such as constituted a disqualification at common law, and in some others, of a crime involving "moral turpitude," which is perhaps but another way of stating the same rule. The latter appears to be the rule in Alabama. In the case of Gilman v. State, 165 Ala., 135, 51 So. R. 722, it was held that under the Alabama statutes relating to the competency and credibility of witnesses as affected by conviction of crime, only conviction for violation of the State laws, and not for violation of municipal ordinances were contemplated. It was further held that the conviction of a mere assault and battery does not involve moral turpitude, which term signi-

fies an inherent quality of vileness and depravity; that assaults are generally the result of a transient ebullition of passion, to which a high order of men are liable, and do not necessarily involve any elements of moral turpitude, and hence conviction for same was not admissible as affecting the credibility of a witness. In 40 Cyc., at page 2612, it is said that: "The fact that a witness is in the habit of drinking intoxicating liquor to excess does not affect his credibility;" citing cases from several states. The authorities appear to be pretty evenly divided upon the question as to whether or not a formal conviction of a violation of a State law prohibiting drunkenness may be shown as affecting the credibility of a witness. In fact, as to particular crimes, the deciding cases are quite diversified and contradictory. Any attempt to analyze or classify them would hardly be worth while here. The general rule that conviction for violation of a municipal ordinance does not constitute such a conviction as is admissible upon the question of the credibility of a witness may well be applied in construing Sec. 2706, Rev. Gen. Stats., Sec. 4373, Comp. Gen. Laws of 1927, not only for the reasons above stated, but for the further reason that our decisions recognize that there are essential differences between State laws and municipal ordinances. See, for instance, Wallace v. State, 41 Fla., 547, 584, 26 So. R. 713. This holding is in harmony with Sec. 20 of Article 3 of the constitution, which says that the Legislature shall not pass any local law for the punishment of crime or misdemeanor. If offenses against municipal ordinances, which are purely local in their territorial operation and effect, should be held to constitute crimes, there would be no uniformity in the criminal laws of the State, and the intent of the constitutional provision would be defeated. But as offenses against municipal ordinances providing penalties for certain acts in violation thereof

are neither crimes nor misdemeanors, strictly speaking, within the meaning of the constitutional provision, or of Sec. 2706 Rev. Gen. Stats., convictions for the same are not admissible as affecting the credibility of witnesses.

Since the strong and well reasoned attacks of Jeremy Bentham, early in the last century, upon the rigid common law rule, which absolutely disqualified witnesses who had been convicted of treason or any other felony, or *crimen falsi*, from testifying, there has been a constant mitigation by statutes of such harsh inhibitions of the common law, which were found in actual practice to frequently deprive innocent persons of invaluable testimony; so that now in nearly all of the states, conviction for one crime only, that of perjury, remains as a ground for disqualification of a witness. Bentham strongly urged that not even this was a sufficient ground, and there are some modern writers who fully approve. It is difficult to logically resist his line of reasoning. Our statute, by removing as a ground for disqualification, all convictions of crime except the crime of perjury, but providing that "evidence of such conviction" could be admitted to affect the credibility of such witness, no doubt intended that such other crimes, conviction for which may be admitted as affecting credibility, should embrace only that class of crimes which at common law constituted ground for disqualification; that is, treason, felonies, and other crimes involving some degree of depravity, baseness, or moral turpitude. While not necessary to a decision of this case, it may not be out of place in this connection to ask, why should the time of the courts be consumed by allowing parties to attack the credibility of witnesses upon grounds which have no reasonable or necessary relation to their integrity or veracity—such, for instance, as attempting to prove that a witness has been convicted for violating a traffic regulation, or a game law, or other statutes dealing

with offenses which are merely malum prohibitum and not malum in se, and which do not necessarily involve moral turpitude. See generally Wigmore on Evidence, 2nd. Ed., Sec. 519 et seq., and Greenleaf on Evidence, 16th Ed., Sec. 372 et seq.

It having been shown upon the trial of this case that the crime to which the witness referred as having been convicted of was merely the violation of a municipal ordinance, the motion of the defendant to strike such portion of the testimony should have been granted.

Each of the defendants was asked by counsel for the State, over the objection of the defendants, the following question: "If you had burned this house, would you admit it?" We are of the opinion that these questions went beyond the bounds of legitimate cross-examination. Such a question is highly argumentative and speculative, calls for the opinion of the witness as to what he would do under certain circumstances, and also constitutes an insinuation that, although shown to be guilty of the crime charged, he would not admit it; thus reflecting upon the character of the witness and tending to prejudice his case in the minds of the jury. Cross-examination should generally be limited to questions of fact. The cross-examiner has no just cause for complaint because the Court excludes questions which call for expression of the witness' opinion as to questions of moral obligation or the like. The proper function of questions is to interrogate, and not to serve as argument, or to form a subtle purveyor of argument. In Clemons v. State, 37 So. R. 647, 48 Fla., 9, the defendant took exception to the Court sustaining an objection to the following question: "Was there anything said or done by either one or both of these parties that led you to believe or suppose that in going up the street they were going to hunt Thomas J. Smith?" This Court held that: "It seems to us that the trial judge was clearly right in his

action. The question called for the belief or supposition of the witness." Citing Camp v. Hall, 39 Fla., 535, 571, 22 So. R. 792.

While we have no decision of this Court directly in point, we are inclined to the opinion that, in the light of general principles the Court should have sustained the defendant's objections to the above questions.

It is contended by plaintiffs in error that the Court erred in permitting an office copy of a portion of an alleged fire insurance policy to be admitted in evidence. This document appears to have been the agent's office record, and was a copy of the filled-in or typewritten portion of the policy, together with certain riders thereto attached, such copy showing that it formed only a part of the fire insurance policy which the agent and his secretary testified was issued to one of the defendants, covering the house that was burned. No complete policy or copy of policy was introduced in evidence. It appears from the testimony that this was the only record kept of this policy, but it was identified as a correct record as far as it went, made at the time the policy was written and in the usual manner that was pursued in the office.

It is true that under the statute the burden was on the State to prove at the time of the burning of said building it was insured against loss or damage by fire in said Importers & Exporters Insurance Company. Hall v. State, *supra.* But in the case of Seymour v. State, 66 Fla., 133, 73 So. R. 7, and Martinez v. State, 76 Fla. 159, 79 So. R. 751, it was held that in a case of this kind it is no error to permit an insurance agent to testify from his records as to a policy of insurance issued by him covering the building in question; the defendant to whom the policy was issued being entitled to the possession of the policy and not being subject to compulsory requirement to produce evidence against himself. It was also held in the latter case

that proof that the insuring corporation is a corporation *de facto* is competent and sufficient. As was said in the Seymour case, this was not an action on the policy by the parties thereto, but a criminal prosecution by the State. While the Supreme Court of one of the northwestern states appears to have taken a different view of this question, we are satisfied that the rule heretofore announced by this Court is well founded and we are not disposed to depart from it. Under this rule, we are of the opinion that the court below was free from error in admitting the evidence above referred to, in connection with the testimony of the agent and his secretary, as tending to prove that a valid policy was actually issued by the insurance company in question insuring the building that was burned against loss by fire.

Assignment of error No. 50 was based upon a sentence in the Court's charge to the jury, as to the burden of proof being upon the State to prove every allegation of the information beyond every reasonable doubt, and closing with these words: ''And this reasonable doubt accompanies and abides with you throughout the trial and until you gentlemen have retired to make up your verdict.'' This was evidently an inadvertance on the part of the Court, but nevertheless constituted error. What the Court had in mind, no doubt, was that the presumption of a defendant's innocence abides in his favor throughout the trial unless and until the State has overcome such presumption by proving his guilt beyond all reasonable doubt. McNair v. State, 61 Fla., 35, 55 So. R. 401.

What has already been said appears to cover all of the controlling legal propositions underlying the numerous assignments of error in this case, or such of them at least as are meritorious, and renders a discussion of the remaining assignments unnecessary. On account of the errors

above pointed out the judgment of conviction must be reversed.

Reversed.

ELLIS, C. J., AND STRUM, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion and judgment.